Alling v. Wenzell.

---

JOHN ALLING ET AL.

v.

WILLIAM T. WENZELL ET AL.

*Corporations—Personal Liability of Stockholders—All Subscriptions on Same Basis—Contract with Directors—Claims—Evidence—Costs—Solicitors' Fees—Form of Order of Decree.*

1.   All subscriptions to the capital stock of a corporation are presumably upon the same basis, all shares being entitled to the same benefits, and subject to the same burdens.

2.   Upon a bill to charge the defendants on account of their individual liability as stockholders in a corporation, it is *held:* That the acceptance by the corporation of property of imaginary value, in full payment for one-third of the capital stock, does not enable the holders to throw the entire burden of the debts of the company upon subsequent subscribers who had no notice of the transaction; that a contract for such acceptance made by the directors with two of the four directors, when only four were present, is invalid; that it is no ground of objection that some claims were without

affidavit, that they were justly due, if such claims were sufficiently proved by other evidence; that the book entitled "Claim Ledger," so far as made up in the course of business, is evidence of the indebtedness shown by it; that the belief of a witness is not evidence; that the fund obtained from the stockholders is not chargeable with the fees of complainants' solicitors; and that the order or decree should require the defendants to pay to the receiver the amounts for which they have been found to be liable.

3.   The amounts for which the individual stockholders are liable, constitutes a fund from which the expenses of getting it into the hands of the receiver, as well as the claims of the creditors, are to be paid.   Such expenses do not include the fees of the complainants' solicitors.

[Opinion filed December 18, 1888.]

APPEAL from the Superior Court of Cook County; the Hon. HENRY M. SHEPARD, Judge, presiding.

Messrs. HUTCHINSON & LUFF, for appellants.

Mr. WALTER M. HOWLAND, for appellees.

GARY, J.   This was a bill filed in the Superior Court by the appellees, on behalf of themselves and other creditors of the Papillon Manufacturing Company, against the appellants and others, as stockholders of that company, to enforce their individual liabilities for the debts of the company under Sec. 25 of the Act of 1872, concerning corporations.   The capital, $600,000, was divided into 6,000 shares of $100 each.

At the organization of the company, 2,000 shares, one-third of the whole, were ordered to be given to Clark and Lotz, the former president and the latter secretary of the company, for the material which they had on hand for conducting the same business (preparation of medicines) for which the company was organized.

The intrinsic value of that property was not very great. Its value to the company might be great, if the business proved successful.   One of the appellants, Belding, was an original subscriber to the stock, and one of the first directors, but is not shown to have attended any meeting either of directors or stockholders, and no actual notice of the manner of paying for this stock issued to Clark and Lotz, is shown to

have come to any of the appellants, before they respectively became stockholders, or even before the company became insolvent.    Then a bill was filed by appellants Alling, Hibbard and Shepherd, with Dunham and Clark, who are not appellants, all stockholders, to wind up the company, and in that bill this matter was stated.    That bill was dismissed and no further notice of it is necessary.

The decree from which the appeal is taken, treats those 2,000 shares as paid up stock, not liable to contribute to the payment of the liabilities of the company.    The effect is, to increase the burden upon the other stockholders, if the other 4,000 shares were outstanding, 50 per cent.; but as, in fact, the whole 4,000 shares were not all outstanding, the burden is increased still more.    Thus the important question in the case is whether that transaction is valid as against creditors of the company, and other stockholders *pro rata* individually liable to creditors.

Upon the authority of Melvin v. Lamar Ins. Co., 80 Ill. 446, without any analysis of the multitude of cases cited by the parties here, that question must be answered in the negative. The bill in that case was filed by stockholders of the insurance company to compel Cushman and Hardin to assume and discharge the obligations of stockholders in the company.    They resisted.    They had taken from the company certificates for 5,500 shares in the company and had advanced to the company $110,000 in money and securities to enable the company to comply with the demand of the State auditors.

It was agreed between the company and Cushman and Hardin that the company should, if Cushman and Hardin required it, take back the stock and return to them what they had given for it.    This had been done, and Cushman and Hardin insisted that the transaction was, in fact, a loan by them to the company, with the stock as security, and not a purchase of the stock, and the Supreme Court (p. 454) agreed with them that the real transaction between the parties as intended by themselves, was a loan.

A few extracts from their opinion are so applicable to this case, that no shorter statement of the reason for holding the

stock held by Clark and Lotz to stand on the same footing as other stock, could be made.

"Certificates of stock were issued to them in the usual form, and it so appeared upon the books of the company. * * * Thereafterward, subscriptions to the stock of the company were made to a large amount. The persons thus subscribing had no reason to suspect that the stock taken by Cushman & Hardin stood upon any different footing from that which they received. * * * All subscriptions are presumably upon the same basis, and all shares entitled to the same benefits, and subject to the same burdens. In the subscription of each person every other subscriber has a direct interest. * * * Such a private arrangement with an individual subscriber, although it may not be intended, is, in law, a fraud upon the other subscribers; and such agreement will be disregarded, and the party held to all the responsibilities of a *bona fide* subscriber." The records of that company had been destroyed by fire, and there was conflicting evidence whether the contract was spread upon them or not. "But assuming that it was, it would be most unreasonable to hold that the subscribers to the stock of this insurance company, scattered abroad as they were, should be held to be bound by any presumed notice of what was being done by the directors of the company, in the city of Chicago, in matters affecting their interests as such stockholders." "It is supposed by counsel for defendants in error, that it was necessary that the complainants in the court below should have made proof that they were influenced, in subscribing for the stock of this corporation, by this pretended subscription of Cushman and Hardin, and it is said that they have failed in doing so. We see no distinct proof of this. But it must be supposed that they and other subscribers were thus influenced by the amount of the subscriptions which had been made to the stock of the company; a part thereof was this large amount taken by Cushman and Hardin." The phrase, "scattered abroad as they were" in the foregoing extract, does not express a condition upon which was based the unreasonableness of charging subsequent subscribers with notice, by the records of the company, of the

Alling v. Wenzell.

arrangement between the insurance company and Cushman and Hardin, for in Stanhope's case, cited as authority for the proposition, no such element existed. 1 Law Rep. Ch. App. (1865-6) 161.

No comment is necessary to show that in this case an acceptance of property of imaginary value, as full payment for one-third of the stock, does not relieve the holders of it from the obligation to bear with the other, but subsequent subscribers, who had no notice of the transaction, the burden of the debts of the company. Whether stock is taken upon an agreement that it may be returned, and the consideration paid back, or property at fictitious and imaginary values taken as payment therefor, can make no difference to a subsequent subscriber, who has a right to assume that the assets of the corporation available to meet its obligations have been, or will be, as much increased by each share issued to other holders, as by one to himself.

To what extent the views of the Supreme Court in the Lamar Insurance Company case, when followed in this, will affect Nourse, Hoit and Zuber, has not been argued on this appeal, and is left undecided.

There is another reason why Clark and Lotz can not be treated as holders of full paid shares. Clark had just been elected president and Lotz secretary and treasurer of the company. They were original subscribers for, and acted as representatives of, more than two-thirds of the capital of the company, and their subscriptions then stood for 2,191⅔ shares each. The board of directors consisted of five persons, of whom they were two, and only four were present. Their votes, or the vote of one of them, was necessary to make a majority. They had no authority to bind the company to any contract made with themselves personally. The cases to this effect are too numerous to cite; a multitude of them are collected in Note 1 to Sec. 517, Morawetz on Corp., 2d Ed.

Their action attempting to charge the company with the receipt of what they gave for the 2,000 shares, as full payment, is not binding upon the company or other stockholders, though in stating the account they are entitled to credit for the value of the property received by the company.

There are some minor questions which will not be discussed in detail. Some claims are objected to because they were not accompanied by an affidavit that they were justly due. This is not a reason for rejecting the claims if they are sufficiently proved by evidence. The object of the affidavit is to prevent the presentation of fictitious claims, and is required by mere usage in the course of business, and not by any rule established by law in chancery proceedings, though it is in administration of estates of deceased persons. Secs. 60 and 64, Chap. 3, R. S. 1872. Still, no claim which is objected to can be allowed without an affidavit, unless supported by such evidence as would entitle the party to recover upon it in an ordinary action. 1 Barb. Chy. Pr. 521–2; 2 Dan. Chy. Pr. 1209.

The book entitled "Claim Ledger," Exhibit C, so far as it was made up in the course of business, while the company was carrying on a regular course of business, is evidence of whatever indebtedness of the company is shown by it. Dows v. Naper, 91 Ill. 44.

Entries made after the company stopped business, whether under the direction or by an employe of the receiver, or by any other person, are not evidence of such indebtedness. But if such entries in that book were made from other books or papers of the company which had been made in the ordinary course of business of the company, those other books or papers may, probably, be competent evidence. The necessity which sometimes arises in jury trials, of using schedules for summarizing voluminous accounts already in evidence, could hardly occur before a master. See B. & W. R. R. v. Dana, 1 Gray, 83.

As to Zuber's testimony, his belief is not evidence; only such knowledge as he had upon the subject is admissible.

The individual liability of stockholders is a fund from which the creditors are to be paid. The necessary expenses of getting this fund into the hands of a receiver are properly added to the debts to be paid, as they are a charge upon the fund, so that the creditors may be paid in full. But the expense to the complainants of presenting their case to the

court, or of the several creditors of proving their claims before the master, are not, except so far as such expense is taxable as costs under the statute, a charge upon the fund, and therefore should not be included. So, while compensation to the master for his services, as well as to the receiver for his, are properly included, there should be allowed to the receiver for his expenses for solicitor's services, only what is a fair compensation for such service as aided the receiver in getting the fund together, ascertaining who were to contribute to it, and the respective amounts of the contributions. It would seem that this labor would be substantially performed, first, by the complainants bringing the stockholders into court as defendants, and establishing the fact that they were stockholders, and of how many shares, and what amount was unpaid thereon, either by their answers or by evidence; and, second, by calculations made by the master, after all the proof of debts was in. Or, in many instances, the master might make the inquiry as to how many shares, and how much unpaid thereon, the several stockholders were liable for. But under color of expenses of the receiver, the complainants and creditors at large are not entitled to the services of a solicitor gratis.

The proper order or decree, after the amount for which a stockholder is liable is ascertained, is that he pay it to the receiver. For non-compliance with such order or decree, the ancient remedy was attachment of the person. 2 Dan. Chy. 1046. But this remedy is not admissible here. Goodwillie v. Millimann, 56 Ill. 523. Under Sec. 47 of the Chancery Act an execution issues, and it is not irregular that such execution should recite the decree and command the sheriff to collect and pay to the receiver the money found by the decree to be payable by the stockholders to the receiver.

The decree is reversed and the cause remanded for further proceedings not inconsistent with this opinion.

*Reversed and remanded.*