SANGAMON COAL MINING COMPANY, FOR USE, ETC.,

V.

E. H. C. RICHARDSON ET AL.

*Garnishment—Chap. 62, R. S.—Unpaid Balance on Shares of Stock— Inadequate Consideration—Receipt in Full—Fraud.*

1. A garnishment proceeding can only reach the debt which the judgment debtor could recover by action at law.

2. Proceedings of this character will not lie on the part of the creditors of a corporation to recover the unpaid balance on shares of stock where the amount received as payment in full was much less than the face value thereof, until after the agreement to that end shall have been set aside by bill in equity.

[Opinion filed June 14, 1889.]

APPEAL from the Superior Court of Cook County; the Hon. ROLLIN S. WILLIAMSON, Judge, presiding.

Mr. CHARLES E. TOWNE, for appellant.

Mr. Frederic Ullmann, for appellees, Richardson, Vehmeyer and Tracy.

The Sangamon Coal Mining Company, having accepted the property in full payment of the subscriptions to its capital stock, has no right of action against the subscribers on their subscriptions, and the garnisheeing creditors have no other or greater rights than the judgment debtor. This general position was held in Crownover v. Bamburg, 2 Ill. App. 162; Netter v. Board of Trade, 12 Ill. App. 607; Webster v. Steele, 75 Ill. 544; Richardson v. Lester, 83 Ill. 55.

This proceeding is, in form as well as in legal effect, an action by the Sangamon Coal Mining Company for the use of the judgment creditors against the garnishees, and on the principle laid down in the authorities above cited can not be maintained. "The principle is that process of garnishment, being a legal proceeding, given by statute, only entitles a party to recover such indebtedness as could be recovered by an action of debt or *indebitatus assumpsit*, in the name of the attachment or judgment debtor against the garnishee." Webster v. Steele, *supra*, at p. 546.

The eighth section of the act concerning corporations (under which this proceeding is had) only authorizes the garnishment of "the balance unpaid by such stockholders upon the stock owned by them," and does not in any way militate against the rule above laid down.

The case of Osgood v. King, 42 Iowa, 478, cited by appellant's counsel, arose under a peculiar statute of Iowa, which gave creditors a remedy against stockholders very similar to that by creditor's bill in chancery; and the other cases cited by him—Union Mutual Life Ins. Co. v. Frear Stone Mfg. Co., 97 Ill. 537, Wenzell v. Alling, in this court, unreported, and Ogilvie v. Ins. Co., 22 How. 387—were creditors' suits where the *bona fides* of the payment of the capital stock was attacked by bill in chancery; and they are, therefore, not in point in this case.

The payment of their subscriptions by the subscribers for stock was made in good faith, in property at fair value, and was a good and valid payment.

The answers of the garnishees alleged that the property turned over was worth $300,000, and that the payment was made in good faith. The answers were *prima facie* true; the burden of disproving them was on the plaintiffs. Their only testimony was that of Starne, who testified that in his judgment the tangible property was worth about $100,000. As has already been said Starne admitted that the property had been earning a net income of ten per cent on $300,000, and that all parties acted in good faith in turning over the property, including the good will of the business, at $300,000. Tracy testified that in his judgment the property was worth fully $300,000, sustaining fully by his evidence the answers of Dresser and himself as to value.

The plaintiff, therefore, failed on the question of fact. The trial court could not, under the evidence, have done otherwise than find against them on that question.

Peck v. Coalfield Coal Co., 11 Ill. App., was a case very much like the present, where the subscriptions to stock had been paid in property, and an attempt was made to hold the subscribers, but the evidence showed that the payment had been made in good faith and the attempt failed. The opinion is somewhat lengthy, and we forbear quoting from it, but commend its perusal to the court.

Among other points the opinion lays considerable stress on the fact that at the time the payment was made the judgment creditor had no claim against the company and was not a creditor.

" Before he gave it credit he should have investigated its affairs, and could have seen by an examination of the books that appellant had fully paid for his stock, and owed nothing for or on account of his subscription."

The same fact exists in this case. The stock was paid up in January, 1882. The indebtedness to these judgment creditors accrued in January, 1887, five years afterward.

Authorities are numerous to the effect that a subscription to the capital stock of a corporation may be paid for in any property which the corporation can lawfully purchase. If the property is accepted as payment at a valuation made in

good faith, the corporation and its creditors are bound, even though the valuation be excessive. It is a question of good faith. 2 Morawetz on Corporations, Sec. 825; Thompson on Liability of Stockholders, Sec. 134; Phelan v. Hazard, 5 Dillon, 45; Young v. Erie Iron Co., 31 N. W. Rep. 814; Coit v. North Carolina Gold Co., 14 Fed. Rep. 12.

GARNETT, P. J.   Judgment having been rendered in favor of Charles W. Merriam, Isaac S. Collins and George W. Dexter against the Sangamon Coal Mining Company, upon which an execution was duly issued and returned unsatisfied, this proceeding in garnishment under Chap. 62 R. S., was commenced in the name of the company for the use of the judgment creditors, against the appellees. The purpose of the garnishment is to recover from appellees certain liabilities which are alleged to be due from them on shares of stock which they own in said company. Appellees do not deny that they are the holders of the shares of stock, but in defense they set up and prove that when the stock was originally subscribed the entire capital stock was subscribed by the parties who paid therefor, by conveying and turning over to the company certain property and business interests, which were accepted and received by the company in full payment of such subscriptions. The value of what was thus paid is matter of dispute, and although it was clearly of a substantial character, for the purpose of this case it may be admitted that the evidence gives good reason to believe that it was not worth more than one-third of the face of the stock. The inadequate value of the consideration given by the stockholders is relied upon by appellant as ground for holding garnishees on their stock liability. Can they be so held in this proceeding? That is the sole question for decision. Garnishment is a proceeding at law, and only debts which the judgment debtor could recover by action at law can be reached by process of garnishment. In this respect the statute remains as it was when Webster v. Steele, 75 Ill. 544, Richardson v. Lester, 83 Ill. 55, and Netter v. Board of Trade, 12 Ill. App. 607, were decided. Those cases hold the negative of the proposi-

tion and are conclusive on the point. When the company received the consideration mentioned in full payment for the stock it no longer had any right of action against the stockholders. Their liability was to the creditors of the company alone, and even the creditors could make them respond only after the discharge given by the company was set aside by bill in equity.

In Scovill v. Thayer, 105 U. S. 143, it appeared that when the shares of stock were subscribed for, the company agreed with the subscribers to accept a certain percentage of the face value thereof, and that agreement was carried out, certificates of full paid shares being issued. The company becoming bankrupt and the assignee seeking to recover the amounts unpaid on the stock, the holders of the shares set up a defense presenting directly the question now before us, which the court disposed of in these words: " The stock held by the defendant was evidenced by certificates of full paid shares. It is conceded to have been the contract between him and the company that he should never be called upon to pay any further assessments upon it. The same contract was made with all the other shareholders and the fact was known to all. As between them and the company this was a perfectly valid agreement. It was not forbidden by the charter, or by any law or public policy, and as between the company and the stockholders was just as binding as if it had been expressly authorized by the charter. If the company, for the purpose of increasing its business, had called upon the stockholders to pay up that part of their stock which had been satisfied by discount, according to their contract, they could have successfully resisted such a demand. No suit could have been maintained by the company to collect the unpaid stock for such a purpose. The shares were issued as full paid, on a fair understanding, and that bound the company. * * * In this case there was no obligation resting on the stockholders to pay at all until some authorized demand in behalf of creditors was made for payment. The defendant owed the creditors nothing, and he owed the company nothing save such unpaid portions of his stock as might be necessary to satisfy the

claims of creditors. Upon the bankruptcy of the company his obligation was to pay to the assignees, upon demand, such an amount upon his unpaid stock as would be sufficient, with the other assets of the company, to pay its debts. He was under no obligation to pay anything until the amount necessary for him to pay was at least approximately ascertained. Until then his obligation to pay did not become complete. But not only was it necessary that the amount required to satisfy creditors should be ascertained, but that the agreement between the company and the stockholder, to the effect that the latter should not be required to make any further payments on his stock, should be set aside as in fraud of creditors. No action at law would lie to recover the unpaid balance due on the stock until this was done." The same rule was held in Peck v. Coalfield Coal Co., 3 Ill. App. 624.

The last case was reversed in the Supreme Court, but without affecting this question. There is no error in the judgment and it is affirmed.

*Judgment affirmed.*