EZRA W. THAYER, JR.,

v.

THE EL PLOMO MINING COMPANY ET AL.

*Corporations—Insolvency—Sec. 25, Act of 1872—Witnesses—Limitations—Sec. 70, Chap. 3, R. S.*

1. The stockholders of an insolvent corporation will be liable to creditors thereof, unless they have given for their stock " the equivalent in money, or in money's worth," and where stock has not been fully paid, stockholders are liable to the extent of the amount due thereon.

2. Upon a bill filed in pursuance of Sec. 25, Act of 1872, concerning corporations, for the purpose of enforcing the payment of a judgment rendered against an insolvent corporation, this court holds that surviving stockholders, not defending, were competent witnesses for the complainant, notwithstanding the fact that their testimony tended to charge the representatives of deceased stockholders, the preponderance of their interest being in opposition to their testimony.

[Opinion filed March 13, 1891.]

APPEAL from the Superior Court of Cook County; the Hon. EGBERT JAMIESON, Judge, presiding.

Messrs. McCLELLAN & CUMMINS, for appellant.

" It is a settled American doctrine that every corporation holds its capital stock as a trust fund, for the benefit of its

creditors.    The fund, however, does not exist until the stock
is issued to shareholders.    Up to that point there is a mere
possibility  or  privilege  of  creation  of  stock.    When the
shares are issued, if the price be paid in cash, so much is
added  to the working capital, thereby enhancing the credit-
or's security.    If the price were not paid, the shareholder's
indebtedness may be looked to for a like effect.    In either
case there is a tangible asset, to which creditors may resort
under the forms of law.    The directors, who may be aptly
styled the trustees, have no right to destroy the fund by giv-
ing away the stock, or, which is the same thing, by disposing
of it for an insignificant return.    Its value in their hands, or
rather the value of the credit therefor, is fixed by the
charter.    When they issue stock to an individual holder,
there must be secured to the corporation, in some shape, an
equivalent, at so much per share, in accordance with the funda-
mental condition of the privilege.    It is not now questioned
that a corporation may issue its stock by way of payment for
purchase of property.    This is on the principle that there is
no need for the roundabout process of first issuing the stock
for money, and paying the money for the property, but it is
necessary that the property so taken should be reasonably
worth the fair value of the stock taken for it."    Chouteau v.
Dean, 7 Mo. App. 214; Talmadge Iron Co., 4 Barb. 382;
Boynton v. Hatch, 47 N. Y. 225.

"The directors have no  more right to accept property
worth manifestly less than the face value of the stock, than
they have to take depreciated or counterfeit money as an
equivalent of the same face value."    See, also, Shickey v.
Watts, S. W. 274.

Messrs. COOK & UPTON, for appellees.

GARY, J.    In May, 1882, a corporation was organized in
Chicago, under the name given in the above title as one of
the appellees, with a capital of $1,000,000, divided into ten
dollar shares.

In October, 1887, the appellant recovered a judgment in
the Superior Court against the company for $2,962.75, which

being unsatisfied, and execution returned *nulla bona*, he filed this bill, containing all necessary averments, under Sec. 25 of the act of 1872 concerning corporations, making all stockholders parties defendant. On some, service could not be obtained, and some who were served did not appear and their default was entered. Such has been the mortality among the stockholders, that the defense now made is only by the representatives of four of them, deceased.

The property of the company was mines and mills in Sonora, Mexico, received by the majority of the board of directors, acting on behalf of the company, from themselves, as full payment for all the stock of the company. The evidence of the market or intrinsic value of the property is not very definite, and it is not improbable that it had neither, but it does appear that it had cost the parties who transferred it to the company but little more than ten per cent of the amount of the stock of the company.

The whole property was taken in a lump for payment of the whole stock in a lump; the question was not considered whether the property was worth a million of dollars or not; it is a fair conclusion that none of the corporators had any idea that it had any such value, but adopted that sum as a convenient one for the amount of stock to be issued.

There was nothing secret or clandestine in the whole business of organizing the company, and issuing full paid stock for this, to the stockholders, probably, glittering and alluring vision of wealth " beyond the dreams of Croesus," and among themselves there could be no ground of complaint.

But as to creditors the case is different. The nominal capital of the company, besides the actual assets, is a fund to which they may look for satisfaction. Such nominal capital is in effect a warranty to creditors by each stockholder, on which he is responsible to the extent that his stock has not been fully paid, that the company once had, either the full payment, or the binding promise of a stockholder for full payment, for every share issued. Alling v. Wenzell, 27 Ill. App. 511; 35 Ill. App. 246, and in Supreme Court on appeal from that, 133 Ill. 264; Bouton v. Dement, 123 Ill. 142; Chisholm v. Forney, 63 Iowa, 333.

From the many cases in this State the rule is fairly deducible that stockholders of an insolvent corporation will be liable to creditors unless there has been given for the stock "the equivalent in money or in money's worth." Union Ins. Co. v. Frear Stove Co., 97 Ill. 537. No fiction, however innocently adopted among themselves, is a defense against creditors. In Iowa, where the stock of a corporation was issued as full paid, for a patent believed to be valuable, but which proved worthless, the stockholders were held liable to creditors. Chisholm v. Forney, 65 Iowa, 333. Sangamon Coal M. Co. v. Richardson, 33 Ill. App. 277, is not inconsistent with the rule stated. The proceeding there was by garnishment, in which the creditor, as against the garnishee, stands in the shoes of the debtor.

It may be that in the absence of all evidence of the real value of the property, it should be considered worth what it had cost; but certainly the stockholders are not entitled to have it arbitrarily assumed that it was worth more.

Here, however, what evidence there is of the value puts it at less than that cost.

If, therefore, the complainant is entitled on other grounds to relief, an account should be taken, and the ratio of payment ascertained.

A question is made as to the competency of surviving stockholders, not defending, as witnesses for the complainant. The effect of their testimony is to charge themselves, and while it may charge the representatives of the deceased with a part of the burden, yet the preponderance of their interest is in opposition to their testimony. Keithley v. Stafford, 126 Ill. 507; Pipe v. Steele, 2 Ad. & E. N. S. 733. Therefore they are competent witnesses, notwithstanding the statute, that a person directly interested may not testify in his own behalf against an executor, etc., except in special cases, of which this is not one.

The bill alleges that the company ceased to do business about the 1st of June, 1883, and that the cause of action upon which the appellant obtained judgment was services ending on the 19th of that month. Whether, under such

circumstances, the appellant was entitled to proceed at once, by bill in equity under Sec. 25, without first obtaining judgment, is a question which has not been argued and is left open.

It may become material in this way: Two of the stockholders, whose representatives are defending, died testate, and their wills were probated more than two years before such representatives were sued. As to one of them, the two years had expired before the appellant obtained judgment; as to the other, about one year had to run. Dugger v. Oglesby, 99 Ill. 405, recognized as right in People v. Brooks, 123 Ill. 246, decides that the two years limitation does not apply to causes of action which could not be presented within that term, thereby in effect, though not in words, overruling Stone v. Clarke, 40 Ill. 411.

If the appellant could have proceeded within the two years in any effectual mode to establish his claim, he is not saved by Dugger v. Oglesby, but if he could not, then he has lost nothing by the lapse of time. In any event, the two years are not in bar of the suit, but only restrict the complainant to assets not inventoried by the executors. Darling v. McDonald, 101 Ill. 370.

The cause must be sent back for further proceedings not inconsistent with this opinion.

*Reversed and remanded.*