**Samuel Cohen, Administrator, and Florence Harbison, Appellants, v. Toy Gun Manufacturing Company, an Illinois Corporation, John Cudahy, George W. Wilbur and Lucy M. Glos, Appellees.**

## Gen. No. 16,825.

1. CORPORATIONS—*stockholders' liability for unpaid stock.* One seeking to enforce a stockholder's liability for unpaid stock may proceed at law under the Corporation Act, § 8, or in equity either under Corporation Act § 25, or Chancery Act § 49.

2. CORPORATIONS—*remedy of judgment creditor of a corporation on return of execution unsatisfied under Chancery Act § 49.* Under Chancery Act § 49, providing that when execution is issued against the property of a defendant and is returned unsatisfied, the party suing out the execution may file a bill against the defendant and any other to compel discovery of property etc., and that the court shall have power to decree satisfaction of the sum due on such judgments out of any personal property, etc., discovered, a judgment creditor of a corporation on return of execution unsatisfied may seek satisfaction against one or more stockholders for stock, which has not in fact been fully paid.

3. CORPORATIONS—*when judgment creditor of corporation may proceed in equity to enforce liability for unpaid stock though judgment is on tort.* Under Corporation Act § 25, providing for suits in equity against a corporation and stockholders, or those liable for the debts of a corporation, in case execution is returned unsatisfied and Chancery Act § 49, providing for bills of discovery against a defendant when execution against his property is returned unsatisfied, a judgment creditor may so proceed against a corporation, to enforce liability for unpaid stock, though his judgment is founded on a tort claim.

4. JUDGMENTS—*when judgment is a debt.* A judgment is a "debt" whether founded on a tort or contract claim.

5. CORPORATIONS—*liability of stockholders who receive fully paid stock for property purchased by the corporation.* Stockholders of an insolvent corporation must respond to the creditors for the. par value of fully paid stock, given for property purchased by the corporation, less the actual value of the property taken unless there is good faith in valuing the property.

6. CORPORATIONS—*presumption of bad faith when property purchased at an exaggerated value for fully paid stock.* There is a strong presumption of bad faith where property is purchased by a corporation, at a highly exaggerated value, for fully paid stock.

7. CORPORATIONS—*when acceptance of property at too high a valuation, not regarded as fraudulent.* It is only when a mistake by directors of a corporation, in accepting property at too high a valuation in payment for stock is in a valid bargain and sale made in good faith in the intelligent exercise of honest judgment that it is not regarded as fraudulent over-valuation.

8. CORPORATIONS—*when proof showing over-valuation of property taken for stock may be made under bill.* Where a bill alleges that there is $200,000 of certain stock subscriptions of a corporation due and owing to creditors thereof, the complainant may make proof of fraudulent over-valuation in property received for stock though there is no direct charge of fraud in the bill.

9. CORPORATIONS—*liability of assignor of unpaid stock to creditors.* Under Corporation Act § 8, one who assigns stock to another is not released from liability to the corporation creditors for the unpaid portion.

10. CORPORATIONS—*effect of assignment of unpaid stock before bill filed to enforce liability.* The fact that a stockholder sold and assigned his stock before the filing of a bill to enforce liability for the unpaid portion thereof, does not affect his. liability.

11. CORPORATIONS—*stockholders' liability.* On a bill to enforce liability against stockholders for unpaid stock, it is not necessary to make all the stockholders parties defendant.

12. CORPORATIONS—*conclusiveness of judgment.* On a bill to enforce liability of stockholders to satisfy a judgment against the

corporation, the judgment is conclusive, where no fraud or lack of jurisdiction is shown; and a contention that no recovery can be had because the bill shows that the judgment is based on an *ultra vires* act of the corporation is without merit.

13. CORPORATIONS—*liability of assignee of unpaid stock.* An assignee of stock with notice that it is not fully paid, though it purports to be such, is jointly liable with the seller for the balance unpaid.

14. CORPORATIONS—*when sufficient showing that assignee of stock knew that it was unpaid.* On a bill by a creditor to enforce liability for unpaid stock, a sufficient showing is made that a defendant assignee of the stock knew that it was unpaid if the creditor establishes facts properly leading to an inference of knowledge that property for which the stock was issued was overvalued.

15. CORPORATIONS—*when property transferred so over-valued as to make owners of stock issued therefor liable for unpaid portion.* There is such fraud, either actual or constructive, in the organization of a corporation as to render the stockholders liable to creditors for unpaid stock, where a patent variously estimated as worth from $5,000 to $25,000 was transferred to it for its entire capital stock valued at $250,000.

Appeal from the Circuit Court of Cook county; the Hon. THOMAS C. WINDES, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1910. Affirmed in part and reversed in part and remanded with directions. Opinion filed October 3, 1912.

EDMUND D. CARTER and W. D. ELMER, for appellant.

F. J. GRIFFEN, for appellee.

MR. PRESIDING JUSTICE GRIDLEY delivered the opinion of the court.

This was a bill in equity, filed in the Circuit Court of Cook county, June 7, 1907, by Samuel Cohen, administrator of the estate of Ervine E. Sanford, deceased, hereinafter called complainant, a judgment creditor of the Toy Gun Manufacturing Company, an Illinois corporation and hereinafter called the company. The bill was filed against the company, John Cudahy (one of the original subscribers to its capital stock), and certain other stockholders of the company (assignees of stock originally subscribed for either by

Cudahy or Edward Hazelhurst), to subject the unpaid portion of the stock to the payment of complainant's judgment, and invited other creditors to join in the bill. On August 29, 1907, Florence Harbison, hereinafter called intervener, filed her petition, alleging that she also was a judgment creditor of the company, and asked for practically the same relief as complainant. The judgment of complainant was for $6,000 and costs, rendered in said Circuit Court, April 13, 1907, upon which judgment execution had been issued, which after demand made by the sheriff had been returned "no property found" and no part satisfied. Said judgment was rendered against the company in a *tort* action for damages occasioned by the negligence of the company, resulting in the death of complainant's intestate. The judgment of the intervener was rendered against the company in a tort action, for $300 and costs, June 22, 1907, in the Municipal Court of Chicago, upon which judgment execution had been issued and, after demand made by the bailiff, had been returned "no property found" and no part satisfied. After evidence taken in open court, and after arguments by the solicitors for the respective parties, the chancellor entered a decree, March 26, 1910, dismissing complainant's bill as amended, as well as the petition of the intervener, for want of equity, each party to pay his own costs and charges in that behalf. In said decree the court found, (a) that it had jurisdiction of the subject matter and of the parties; (b) that the judgments made the basis of the bill and the intervening petition arose out of *tort;* (c) that there was no such fraud, either actual or constructive, in the organization of the company as a corporation and the transfer of the patent for stock therein, as to hold the stockholders liable for any debts of the corporation for unpaid stock; and (d) that these judgments, being for torts, are without the purview of our statute on corporations as *debts* of the corporation for which the

stockholders would be liable for unpaid stock. Complainant and intervener jointly prayed an appeal to this court, which was duly perfected, and the record is before us.

The bill, as amended, after setting forth the recovery of complainant's judgment and the return of the execution unsatisfied, charged substantially, in part, that the company was incorporated about Oct. 7, 1902, and still existed as a corporation; that its capital stock was $250,000, of which amount $125,000 was subscribed for by the defendant, Cudahy, and $125,000 was subscribed by Edward Hazelhurst, (who was not made a party to the bill); that not to exceed $25,000 of Cudahy's subscription was ever paid to the company, and that there was still due from him on his subscription the sum of $100,000; that Cudahy and Hazelhurst, being the owners of an undivided one-half interest in a letters-patent for an improvement in toy guns, had issued to them and to others designated by them, in payment for the transfer of said patent to the company, the entire capital stock of the company; that said patent at the time of said transfer was not worth to exceed $50,000; that $200,000 of said capital stock was thereby left unpaid for; that there was owing to said company and its creditors $100,000 by Cudahy, on his subscription for said stock, and a like sum from Hazelhurst on his subscription; that Hazelhurst was wholly insolvent and a judgment against him would be of no value whatever; that on January 27, 1903, Cudahy assigned and transferred to Henry L. Glos, now deceased, all of his stock in the company; that thereafter said Glos and said Hazelhurst caused to be assigned and transferred to the defendant, George W. Wilbur, 250 shares of the stock of the company, so subscribed for by the defendants Cudahy and Hazelhurst; that said Wilbur had notice that said stock so assigned to him had not been fully paid for; that about July 6, 1903, the company, through its negligence, caused an explosion of

a chemical compound, illegally manufactured by it at its factory in Chicago, whereby complainant's intestate was killed and others injured; that the company incurred liabilities, on account of its negligent act, of many thousands of dollars; that on September 21, 1903, the company filed a petition in bankruptcy in the United States Court for the Northern District of Illinois; that a sale of the assets of the company was made under order of the Bankruptcy Court to the highest bidder for cash, who, by previous arrangement with Glos, transferred said assets to certain persons named by Glos, in which assets Glos retained an interest, and from the proceeds of which the heirs and devisees of said Glos, subsequent to his death, received money; that at the time of his death Glos was the owner of 1,198 shares of the stock of the company and of a large estate; that prior to his death, Glos caused the dismissal of the bankruptcy proceedings, and that since that time the company had ceased doing business. There was no direct charge of fraud on the part of Cudahy and Hazelhurst and the other directors in causing the 2,500 fully paid shares to be issued to Cudahy and Hazelhurst in consideration of the transfer of the patent.

The evidence introduced on the hearing tended to support such allegations of the bill as are above mentioned. The bill as amended made the company, John Cudahy, George W. Wilbur, and the devisees and heirs at law of Henry L. Glos, deceased, parties, and prayed that they might make full answer, etc., and especially that they "set out and discover the nature and situation, amount and value of all the property, interests and effects" of the company, and that they might be decreed to pay to complainant the amount remaining unpaid on the stock originally subscribed for by the defendant Cudahy, to the extent of the amount due complainant, for principal and interest on complainant's judgment, and costs, including amounts that

might be found due other creditors of the company who might join herein and contribute to the expense, etc. On the hearing, it appeared that the entire estate of Henry L. Glos had been left by will to his widow, Lucy M. Glos, that said estate had been fully settled and the executors discharged more than one year prior to the rendition of complainant's judgment, and the case was dismissed as to the heirs and devisees of said Glos, except the defendant, Lucy M. Glos. She was retained as a defendant on the theory, as we understand it, that the evidence showed that as sole devisee of said Henry L. Glos, there came into her hands, after his death, the sum of $1,250 in cash as the proceeds of the assets of the company, which, as charged in the bill, after sale by the bankruptcy court, were transferred to certain persons named by Henry L. Glos and in which he retained an interest, that this was a contract, or secret arrangement, in fraud of the creditors of the company, and that Lucy M. Glos, having received the proceeds of that fraudulent contract, was liable to complainant to said amount of $1,250.

After a careful examination of the record and the briefs of counsel, we have reached the conclusion that neither the allegations of the bill nor the evidence introduced sustain complainant's theory as to the $1,250 in the hands of Lucy M. Glos, and that the chancellor did not err in dismissing the bill and the intervening petition as to her.

As to the liability of the defendant Cudahy, the evidence showed that Edward Hazelhurst had made application for letters-patent for an improvement in toy guns; that on September 13, 1902, after some negotiations with the defendant Cudahy, Hazelhurst sold Cudahy a one-half interest in said patent for $5,000 cash, and $20,000 more to be paid out of the profits of manufacturing and selling the invention, and authorized the issuance of the patent to himself and Cudahy as equal owners, each of an undivided one-half inter-

est; that about two weeks thereafter, and before the application had been allowed, Hazelhurst and Cudahy decided to organize an Illinois corporation, with principal office in Chicago, with a capital stock of $250,000, number of shares 2,500,·amount of each share $100, "to manufacture and sell toy guns, pistols and other toy articles," one-half of said capital stock to go to Hazelhurst and the other half to Cudahy; that on October 7, 1902, the defendant company was organized as a corporation; that Hazelhurst subscribed for 1,250 shares, Cudahy for 1,246 shares, Morris Cassard for 2 shares, Evan Humphrey for 1 share and Timothy D. Hurley for 1 share; that Cassard and Humphrey were employes of Cudahy and Hurley was Cudahy's attorney; that at the first meeting of the stockholders the five subscribers were elected directors of the company; that Cassard and Humphrey paid nothing for the stock so subscribed for by them, and that they and Hurley represented no other interests than those of the defendant Cudahy; that at the first meeting of the directors a resolution was adopted in which it was set forth (as changed by interlineations) that Cudahy and Hazelhurst were the sole owners of an application for a patent, serial No. 103,961, and of a patent for the manufacture of toy guns, and that they had made a proposition to sell to the company the patent for the sum of $250,000, and "Be it Resolved" that said proposition be accepted and that the president and secretary be instructed to issue to them, as they may direct, capital stock of the company to the extent of $250,000 as "payment in full" for the transfer of all the right, title and interest of Cudahy and Hazelhurst in and to said application and patent to the company; that on October 16, 1902, Hazelhurst and Cudahy executed an assignment of the application for the patent to the company, and authorized its issuance, if allowed, to the company; that the patent was not allowed until March 24, 1903; that it was issued to the company, as

assignee, by direct and mesne assignments from Edward Hazelhurst, assignor; that in the meantime, on October 10, 1902, before said patent was granted, and before the assignment of the application for the patent by Hazelhurst and Cudahy to the company, certificates of stock were issued to Hazelhurst and Cudahy and the other subscribers in accordance with their several subscriptions; that two patent experts testified as to the value of the patent; that one of them placed its value at not to exceed $10,000, and the other at not to exceed $5,000; that the latter expert testified that the patent was not a basic patent, that it appeared from the file wrapper and contents that all of the claims except one, as originally drafted, had been rejected by the patent office, and that the claims had to be narrowed before the patent was allowed; that the inventor, Hazelhurst, testified that he considered the patent to be worth $25,000 at the time the company was organized (which was the highest value fixed by any witness), and that he (Hazelhurst) had no property subject to execution. The defendant Cudahy, and other witnesses called in his behalf, in attempting to justify the sale of the patent to the company for $250,000 of stock fully paid, testified that the usual way of figuring capitalizations of companies was to take into consideration the profits that might result from the business. Cudahy also testified that when Hazelhurst urged him to buy a one-half interest in said patent, the latter made such representations to him, as to the great demand for the patented article and the great profits to be derived from the manufacture and sale thereof, that after a careful investigation he was led to believe, and did believe, that a profit of from $25,000 to $50,000 per year could be made, and that there was no fraudulent intent of any kind in his mind at the time of the transfer of the application for the patent to the company in consideration of fully paid stock to said amount, because he believed at the time that,

under proper management, the manufacture and sale of the article would pay a good dividend on a capital of $250,000. But the defendant Cudahy, and the witnesses called in his behalf, did not fix any definite value of the patent at the time of its transfer to the company. Cudahy also testified that he actually expended about $15,000 in the enterprise, $5,000 of which he paid Hazelhurst personally at the time of the transfer of the one-half interest in the patent to him, $5,000 as a loan to the company, and about $5,000 in the payment of the company's bills as they came in; that the business was not a success and that the company paid no dividends; that he finally decided to sell out, having become dissatisfied with Hazelhurst, and directed Hazelhurst to try and find a purchaser for all of his stock; that Hazelhurst brought Henry L. Glos to him, and that during January, 1903 (this was before the patent had been allowed), he caused to be transferred all of his 1,250 shares of stock, which were in his name or in the names of others in his interest, to said Glos, and that Glos paid him the amount which he had actually expended in the enterprise—about $15,000. After Cudahy sold his stock he had no further connection with the company.

As to the liability of the defendant Wilbur, as assignee and purchaser of 250 shares of the Hazelhurst and Cudahy stock from Hazelhurst and Glos, the evidence showed that he was retained as attorney for Hazelhurst and Glos to assist in bringing about the sale and transfer of the Cudahy stock to Glos and that he participated therein; that Hazelhurst described to him the manner in which the corporation had been organized; that Wilbur carefully scrutinized the record book of the corporation and decided to and did, as he testified, in the presence of all parties then in interest, make some changes and interlineations in the minutes of the first meeting of the board of directors, and particularly in the resolution as to the transfer of all

of the stock in consideration of the transfer to the company of the patent; that Wilbur had notice of the manner in which the stock had been issued and how and to what extent paid for; and that after the consummation of this sale of the Cudahy stock to Glos, Wilbur was given and accepted 125 shares of Hazelhurst's stock and 125 shares of Glos's stock, in all 250 shares, of the par value of $25,000. Complainant seeks to charge Wilbur, as assignee of Hazelhurst and as assignee of Glos, for the unpaid balance due on this stock, which, as is claimed, Wilbur received in consideration of legal services rendered Hazelhurst and Glos.

The evidence further disclosed that an explosion occurred at the factory of the company, in which complainant's intestate was killed and others were injured; that as a result the business of the company, as Wilbur testified, "had to cease"; that the company went into bankruptcy; that afterwards the bankruptcy proceedings were dismissed, but the company ceased doing business; that from the schedules filed in the bankruptcy proceedings on September 21, 1903, which schedules were signed "Toy Gun Mfg. Co., by Henry L. Glos, Treas. Pet." it appeared that the total assets of the company were $17,639.12, and the total liabilities $14,139.10, and in which schedules was the item "One patent, No. 723,603—uncertain value"; that at the bankrupt sale had thereafter the purchaser, or pretended purchaser, of said assets testified that, although the patent was transferred to him with the other assets, he gave nothing for said patent, and did not consider its value in making his bid.

It is first urged by counsel for Cudahy that the decree should be sustained because the judgments of complainant and of the intervener, being founded on *tort* claims, are without the purview of the statutes of this state as "debts" of a corporation for which the defendant Cudahy, as a stockholder, would be liable for unpaid stock. After a careful examination into

this question and a review of the statutes of this state and of pertinent authorities, we have reached a contrary conclusion.

A party seeking to enforce a stockholder's liability for unpaid stock may proceed, under the statutes of this state, at law under Section 8 of our Corporation Act, or he may proceed in equity, either under Section 25 of said Act or under Section 49 of our Chancery Act. Parmelee v. Price, 208 Ill. 544, 559. Section 8 of the Corporation Act provides:

"Every assignment or transfer of stocks, on which there remains any portion unpaid, shall be recorded in the office of the recorder of deeds of the county within which the principal office is located, and each stockholder shall be liable for the *debts* of the corporation to the extent of the amount that may be unpaid upon the stock held by him, to be collected in the manner herein provided. No assignor of stock shall be released from any such indebtedness by reason of any assignment of his stock, but shall remain liable therefor jointly with the assignee until the said stock be fully paid. Whenever any action is brought to recover *any indebtedness* against the corporation, it shall be competent to proceed against any one or more stockholders at the same time to the extent of the balance unpaid by such stockholders upon the stock owned by them, respectively, whether called in or not, as in cases of garnishment. Every assignee or transferee of stock shall be liable to the company for the amount unpaid thereon, to the extent and in the same manner as if he had been the original subscriber."

Construing this section, it has been decided by our Supreme Court in Parmelee v. Price, 208 Ill. 544, 555, that a stockholder who is still liable *to the corporation* for the unpaid portion of his subscription, is directly liable to a creditor under this section, and the creditor may sue the corporation and garnish the stockholder at the same time without obtaining a judgment against the corporation and having an execution returned "no property found," and that the right of action accrues

to the creditor and against the stockholder as soon as
the debt against the corporation is due. But, as was
said in the same case on page 556, "In the case at bar,
however, no right of action accrued to the creditor
under Section 8, *supra,* for the reason that, *as between
the corporation and the stockholder,* the stock subscrip-
tion was fully paid. A garnishing creditor in a pro-
ceeding by garnishment can assert no greater rights
against the garnishee than could his debtor. * * *
Consequently appellant's right of action against the
stockholders in the case at bar did not accrue until
they had a right to proceed, *in equity,* to set aside the
fraudulent arrangement by which the stock had been
issued in exchange for property received by the cor-
poration at a fraudulent over-valuation." Complain-
ant in the case before us "proceeded" in equity
against the stockholders, making the corporation a
party to the bill, after a judgment had been obtained
against the corporation and a return of the execution
thereon unsatisfied.

Section 49 of the Chancery Act provides:

"Whenever an execution shall have been issued
against the property of a defendant, on a judgment
at law or equity, and shall have been returned unsatis-
fied, in whole or in part, the party suing out such exe-
cution may file a bill in chancery against such defend-
ant, and any other person, to compel the *discovery* of
any property or thing in action, belonging to him,
or held in trust for him, and to prevent the transfer
of any such property, money or thing in action,
or the payment or delivery thereof to the defend-
ant, except when such trust has, in good faith, been
created by, or the fund so held in trust has pro-
ceeded from, some person other than the defendant
himself. The court shall have power to compel such
discovery, and to prevent such transfer, payment or
delivery, and to decree satisfaction of the sum remain-
ing due on such judgments, out of any personal prop-
erty, money or things in action, belonging to the de-
fendant, or held in trust for him, with the exception

above stated, which shall be discovered by the proceedings in chancery, whether the same were originally liable to be taken in execution at law or not; *provided,* etc."

Under this section it has been held that a judgment creditor of a corporation, after a return of an execution on its judgment unsatisfied, may seek satisfaction against one or more delinquent stockholders of the corporation for stock which has not, in fact, been fully paid. Young v. Farwell, 139 Ill. 326, 332; Palmer v. Woods, 149 Ill. 146, 156; Coleman v. Howe, 154 Ill. 458, 474; Siegel v. Andrews, 181 Ill. 350, 356; Singer v. Hutchinson, 183 Ill. 606, 618; Parmelee v. Price, 208 Ill. 544, 552.

Section 25 of the Corporation Act provides:

"If any corporation or its authorized agents shall do, or refrain from doing any act which shall subject it to a forfeiture of its charter or corporate powers, or shall allow *any* execution or decree of any court of record, for a *payment of money,* after demand made by the officer, to be returned 'No property found,' or to remain unsatisfied for not less than ten days after such demand, or shall dissolve or cease doing business, leaving debts unpaid, suits *in equity* may be brought against all persons who were stockholders at the time, or liable in any way, for the *debts* of the corporation, by joining the corporation in such suit; and each stockholder may be required to pay his pro rata share of such *debts or liabilities* to the extent of the unpaid portion of his stock, after exhausting the assets of such corporation. And if any stockholder shall not have property enough to satisfy his portion of such debts or liabilities, then the amount shall be divided equally among all the remaining solvent stockholders. And courts of equity shall have full power, on good cause shown, to dissolve or close up the business of any corporation, to appoint a receiver therefor," etc.

In speaking of Sections 8 and 25 of the Corporation Act, our Supreme Court, in the case of Alling v. Wenzel, 133 Ill. 264, 272, said:

''These two sections, having reference to the same subject,—the liability of stockholders, and the remedies by which to enforce the same,—should be so construed that each may stand, and effect be given to the provisions of each. The first section creates the liability of the stockholder and defines its extent, and also makes his assignee equally and jointly liable with him. Section 25 authorizes creditors of the corporation to bring suits in equity against the corporation and stockholders to enforce the liability of the latter, if the corporation does, or fails to do, any act subjecting it to a forfeiture of its charter, or fails to make payment, or permits executions to be returned no property found, after demand by the officer, or shall dissolve or cease to carry on its business, as therein provided. The liability of the stockholder is for his unpaid stock. To the extent it is unpaid, he is liable for the *debts and obligations* of the corporation.''

Because of the language of Sections 25 and 49, and because of the decisions of our Supreme Court above cited, we are of the opinion that when *any* execution for the payment of money on a judgment is returned ''no property found'' against a corporation, the judgment is such an *obligation* or *liability* of the corporation as will allow the judgment creditor to proceed in equity under either section to enforce the liability of a stockholder of the corporation on his unpaid stock to the extent it is in fact unpaid. In other words, we hold that the judgment creditor may so proceed when his judgment is founded on a *tort* claim.

Counsel for Cudahy argues that Sections 8 and 25 make the holders of unpaid stock in a corporation liable only for ''debts'' of the corporation to the extent of the unpaid portion of the stock held by him, that a ''debt'' does not mean a claim for damages for a *tort* and that procuring a judgment on a *tort* claim does not change such claim into a ''debt.'' Counsel does not mention that portion of Section 25 which says ''each stockholder may be required to pay his pro rata share of such *debts or liabilities* to the extent of

the unpaid portion of his stock.'' Webster's diction-
ary defines the word ''liability'' as ''the state of being
bound or obliged in law or justice   *   *   *   that
which one is under obligation to pay.'' Furthermore,
we think a judgment is a ''debt,'' whether founded on
a *tort* claim or contract claim. Bouvier's Law Diction-
ary, under the heading of ''Debt (Lat. *debere,* to owe;
*debitum,* something owed),'' defines a ''judgment debt''
as ''one which is evidenced by matter of record,'' and
says ''a debt may be evidenced by matter of record,
by contract under seal, or by a simple contract. The
distinguishing and necessary feature is that a fixed
and specific quantity is owing and no further valua-
tion is required to settle it.'' In Grey v. Bennett, 3
Metc. (Mass.) 526, it was said: ''The word 'debt' is
of large import, including not only debts of record, or
judgments, and debts by specialty, but also obligations
arising under simple contract, to a very wide extent;
and, in its popular sense, includes all that is due to a
man under any form of obligation or promise.'' In re
Comstock, 22 Vermont 642, it was said: ''There is no
distinction, under the bankrupt law, between a judg-
ment in an action arising *ex delicto* and a judgment in
an action arising *ex contractu.* They are both 'debts'
within the meaning of the law, and both provable
against the estate of the bankrupt.'' See, also, In re
Brook, 3 McLean (U. S.) 317; Howland v. Carson, 28
Ohio St. 625. ''A *claim* of tort against the corpora-
tion is not a debt of the company for which the stock-
holders or officers are liable.'' 8 Am. & Eng. Enc.
Law (2d Ed.) 993; see, also, Hill v. Bowman, 35 Mich.
191. And a claim for damages in an action of tort
does not become a 'debt' by verdict before judgment.
Zimmer v. Schleehauf, 115 Mass. 52. ''But when
judgment has been entered upon a verdict recovered
in an action for a tort, the judgment is as much a debt
as if recovered in an action *ex contractu.*'' 8 Am. &
Eng. Enc. Law 994. ''A judgment against a corpora-

tion is certainly a debt of the corporation without reference to the question whether it was founded upon a tort or upon a contract. Hence, where it is sought merely to subject what remains unpaid by the shareholder in respect of his shares, it is clear that any demand against the corporation which has been reduced to a judgment will be available as a basis of such a proceeding without reference to the nature of the original claim. If it is merged in the judgment it becomes a 'debt of record,' in the language of the common law." 10 Cyc. 684; 3 Thompson on Corp., Sec. 3112; Powell v. Oregonian Ry. Co., 36 Fed. Rep. 726. In Clapp v. Peterson, 104 Ill. 26, 35, it was decided that a money decree, rendered against a corporation at the suit of a party who charged she had been induced by the fraudulent misrepresentations of the corporation to make a sale to the corporation of certain property for an inadequate consideration, is, in a subsequent action in equity, brought by said party to subject to the payment of said decree certain property in the hands of a former stockholder of the company, to be considered as "the highest evidence of an *indebtedness* by the company." We are aware that there are decisions in other jurisdictions holding, under statutes subjecting the unpaid portion of shares of stock in a corporation to the payment of the debts of the corporation, that a judgment founded on a tort claim is not such a debt, but upon examination into many of these statutes and decisions it will be found that the statutes use the words "debts *contracted*," or some other limitation on the word "debt." We are also aware of some decisions in other jurisdictions squarely holding that a judgment founded on a tort claim is not a debt, but to this doctrine we cannot agree.

It is also urged by counsel for Cudahy that the court correctly found that there was no such fraud, either actual or constructive, in the organization of the de-

fendant company as a corporation and the transfer of the patent for stock therein, as to hold the stockholders liable for any debts of the corporation for unpaid stock. Under the facts of this case we cannot agree with this contention. Unless there is entire good faith in valuing property, purchased by a corporation for fully paid stock, the stockholders must respond to the creditors of the corporation, when insolvent, for the par value of such stock, less the actual value of the property taken. Coleman v. Howe, 154 Ill. 458. And where property is so taken at a highly exaggerated value, a strong presumption of bad faith arises which will be conclusive unless rebutted. And the issuance of fully paid stock to the amount of $300,000 for property worth but about $75,000 is fraudulent on its face. Coleman v. Howe, *supra*. The law requires that the directors of a corporation obtain money or money's worth to the full amount of a stock subscription. If they see fit to accept property in lieu of cash, they can only take it at its fair cash market value, or, if it has no ascertainable market value, only at such a price as might be realized by selling the property to others for cash. They should ascertain the value of such property precisely in the same manner as they would do if they were about to invest their own money therein. The rule, that a mistake by directors in accepting property at too high a valuation in payment of a stock subscription cannot be regarded as a fraudulent over-valuation, applies only where the transaction constitutes a valid contract of bargain and sale, made in good faith by the directors, and in the intelligent exercise of fair and honest judgment on their part, and does not apply to a sham transaction. Gillett v. Chicago T. & T. Co., 230 Ill. 373; see, also, Sprague v. National Bank of America, 172 Ill. 149; Thayer v. El Plomo Mining Co., 40 Ill. App. 344, where mining property of little value was taken in full payment of the stock; Moore v. U. S. Barrel Co., 238 Ill. 544, where

a patent of uncertain value was taken in payment for the stock. And a stockholder's liability is not affected by the bankruptcy of the corporation. Tibballs v. Libby, 87 Ill. 142.

Counsel for Cudahy also makes the point that there was no allegation of fraud, in terms, in the bill, and no allegation that either Cudahy or Hazelhurst or the other directors, knowingly or intentionally over-estimated the value of the patent. While it is true there was no direct charge of fraud in the bill, it was alleged that there was $100,000 of the stock subscription of Cudahy, and a like sum of the stock subscription of Hazelhurst, due and owing to the creditors of the corporation, and we think this allegation was sufficient to enable complainant to make proof of fraudulent over-valuation. Under an allegation in a bill that the stock of a corporation is unpaid, proof of facts amounting to fraudulent over-valuation of the property taken by the corporation for it may be introduced, although fraud is not, in terms, charged in the bill. Coleman v. Howe, 154 Ill. 458.

Counsel for Cudahy also urges that at the time of the explosion at the factory of the company, Cudahy had sold and transferred all of the stock originally subscribed for by him, and that subsequently to such transfer he was not in any way, directly or indirectly, connected with the business of the corporation. Under Section 8, *supra,* an assignment of stock by a stockholder to another party does not release him from liability to creditors of the corporation for the unpaid portion upon said stock. Sprague v. National Bank of America, *supra;* Moore v. U. S. Barrel Co., *supra.* And the fact that the stockholder sold and assigned his stock before the bill was filed to enforce that liability makes no difference. Florsheim v. Illinois T. & S. Bank, 192 Ill. 382.

Counsel also urges, as a reason why the decree should be affirmed, that all the stockholders, particu-

larly Edward Hazelhurst, were not made parties defendant to the bill. There is no force in this contention. "A corporation creditor may, after judgment against the corporation and execution returned unsatisfied, proceed by bill against òne or more delinquent stockholders without joining all, those sued having the right to bring in all others by cross-bill." Palmer v. Woods, 149 Ill. 146, 155; Siegel v. Andrews, 181 Ill. 350, 356; Singer v. Hutchinson, 183 Ill. 606, 618; Coleman v. Howe, 154 Ill. 458, 474. "A creditor of a corporation seeking satisfaction of his debt need look no further than to find a solvent stockholder who is liable for it, and he sustains no relation to the corporation which requires him to adjust equities between stockholders or between the corporation and others." Edwards v. Schillinger, 245 Ill. 231, 244.

Counsel also argues, because the bill alleges that the company, through its negligence and carelessness, caused an explosion of a chemical compound, "illegally manufactured" by it at its factory, which resulted in the death of complainant's intestate, that complainant's judgment is based upon an *ultra vires* act of the company, and therefore, complainant cannot recover. This contention is, we think, without merit. It is a well settled rule that a judgment rendered in a court of competent jurisdiction is conclusive between parties and privies in regard to all matters of controversy determined by the judgment; and all persons, represented by the parties, both plaintiff and defendant, are bound and concluded as privies by the judgment rendered. In the absence of fraud in obtaining the judgment against the company, and in the absence of a want of jurisdiction in the court wherein the judgment was rendered, which is not shown, we think the complainant's judgment was conclusive against the stockholders, under this bill. Singer v. Hutchinson, 183 Ill. 608, 612.

We have not been favored with a brief and argument

on behalf of the defendant, George W. Wilbur. We are of the opinion that he is liable on the unpaid portion of the 125 shares of stock originally subscribed for by Hazelhurst, and for the 125 shares of stock originally subscribed for by the defendant Cudahy, which 250 shares of stock, as the evidence disclosed, were assigned and transferred to him on January 27, 1903, and for which he signed a receipt. We think the evidence shows that when he received the stock he had notice that the stock had not been fully paid. When the assignee of stock in a corporation takes the same with notice that it is not fully paid stock, though purporting to be such, the assignee is jointly liable with the seller or assignor for the balance unpaid. Alling v. Wenzel, 133 Ill. 264, 272; Coleman v. Howe, *supra;* Sprague v. National Bank of America, *supra;* Higgins v. Illinois T. & S. Bank, *supra;* Garden City Sand Co. v. American Refuse Co., 205 Ill. 42; Gillett v. Chicago T. & T. Co., *supra.* And it is sufficient if, on the hearing, the creditor establishes such facts as properly lead to an inference of knowledge of over-valuation on the part of the purchaser. Garden City Sand Co. v. American Refuse Co., *supra.* And the apparent owner of the stock, as appears from the books of the corporation, is liable (Sherwood v. Illinois T. & S. Bank, 195 Ill. 112), and a person receipting for a certificate of stock is presumed to be the owner of the stock. Gillett v. Chicago T. & T. Co., *supra.*

For the reasons indicated the decree of the Circuit Court in so far as the same directs the dismissal of the bill as to Lucy M. Glos is affirmed, but in so far as it relates to the defendants, John Cudahy and George W. Wilbur, it is reversed and remanded with directions to enter a decree against said Cudahy and said Wilbur in accordance with the prayers of said bill of complaint as amended and said intervening petition.

*Affirmed in part and reversed in part and remanded with directions.*