Ditson De Shelter, Appellee, v. American Spring Water Supply Company et al., on appeal of James B. Wilbur, Appellant.

### Gen. No. 18,013.

1. CORPORATIONS, § 605*—*when corporation is liable for debts of another corporation.* The doctrine that two corporations become consolidated where one corporation absorbs all the assets of another, and that the absorbing company is liable for the debts of the absorbed company does not apply where a corporation sells all its assets to a partnership and a large portion of such assets are subsequently transferred to the second corporation.

2. CORPORATIONS, § 213*—*when finding as to value of property will not be disturbed.* Held, that a finding, as to the value of certain property turned over to a corporation for stock, was not manifestly wrong.

3. CORPORATIONS, § 124*—*how stock may be paid for.* In this State nothing but money or money's worth is to be regarded as payment for shares of capital stock of corporations.

4. CORPORATIONS, § 213*—*when stockholders are liable to creditors.* When either by fraud, accident or mistake stock of a cor-

*See Illinois Notes Digest, Vols. XI to XIV, same topic and section number.

poration has not been paid for in money or money's worth, the holder thereof is liable to creditors of the corporation to the full extent of the difference between the par value of the stock and the money or money's worth paid to the corporation for such stock.

5. CORPORATIONS, § 538*—*when bill will lie.* Where a person recovered a judgment against a corporation and execution was returned unsatisfied, *held* that a bill was proper under Chancery Act, § 49, J. & A. ¶ 929, for the satisfaction of such judgment, and when it appeared that certain stockholders had overvalued property turned over to the corporation, a judgment against such stockholders was proper.

Appeal from the Superior Court of Cook county; the Hon. MARTIN M. GRIDLEY, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1911. Affirmed. Opinion filed October 15, 1913.

SCOTT, BANCROFT & STEPHENS, for appellant.

CHARLES R. WHITMAN, for appellee; ARBA N. WATERMAN, of counsel.

MR. PRESIDING JUSTICE GRAVES delivered the opinion of the court.

On April 28, 1902, one James H. Wells, acting for himself and James B. Wilbur, the appellant, purchased at a public sale conducted by a receiver all the tangible property, book accounts, contracts, good will and customers of the American Water Company, a bankrupt, for the lump sum of $11,000. The American Water Company had been engaged in the business of buying, selling and distributing mineral water in the city of Chicago. Otis W. Hinckley and George J. Schmitt, partners doing business as Hinckley & Schmitt, had been the chief competitors in business of the American Water Company, and at the sale bid for the property the sum of $10,750. After the purchase of this property by Wells, a corporation by the name of the American Spring Water Supply Company was formed with a capital stock of $50,000, divided into 500 shares of the par value of $100 per share. Of

these shares one was subscribed for and issued to Fred L. Wells, one was subscribed for and issued to Albert A. Johnston and 498 were subscribed for and issued to James H. Wells, he still acting for himself and appellant. Later 249 of these shares were duly transferred to appellant by James H. Wells. The only consideration paid for the 498 shares issued to James H. Wells was the property purchased by him at the bankruptcy sale, which was turned over by him bodily to the corporation at the valuation of $49,800, and the same was accepted by the corporation in full payment for the shares issued to him. The American Spring Water Supply Company continued the business formerly conducted by the American Water Company until January 7, 1904, when negotiations that had been carried on for several months between the American Spring Water Supply Company and Otis W. Hinckley and George J. Schmitt, as partners, culminated in a sale to them of all the tangible property, book accounts and good will of the business of the American Spring Water Supply Company for the sum of $30,000, and the assumption by them of and the agreement on their part to pay certain outstanding debts of the American Spring Water Supply Company to the amount of $1,425.48. All the property of that Company was duly transferred to Hinckley and Schmitt, partners, by bill of sale and the stock in the corporation was also transferred to Otis W. Hinckley, George J. Schmitt and one F. B. DeForrest, who seems to have been connected in business in some way with Hinckley and Schmitt, and these new stockholders were duly elected directors and officers of the American Spring Water Supply Company. Pending the negotiations that culminated in this sale, and before the sale and transfer of the property of the American Spring Water Supply Company to Otis W. Hinckley and George J. Schmitt, a corporation was formed by the name of Hinckley &

Schmitt, in which Otis W. Hinckley and George J. Schmitt were the chief stockholders, enough stock being held by others to permit of a corporate existence. After the transfer of the property of the American Spring Water Supply Company to Hinckley & Schmitt, as partners, they collected and kept about $4,000 of accounts purchased of the American Spring Water Supply Company, but the property used in the conduct of the business was turned over by Hinckley and Schmitt, partners to Hinckley & Schmitt, incorporated, without any consideration being paid therefor by the corporation to the partnership. About the same time the stock and charter of the American Spring Water Supply Company was transferred by Otis W. Hinckley and George J. Schmitt to one Thomas F. Dow, the obvious purpose of which was an attempt to end the corporate existence of the American Spring Water Supply Company. Later, appellee in this case sued the American Spring Water Supply Company for personal injuries received by him while in its employ, and while it was owned by the Wells and Wilbur combination, and recovered a judgment against that company for $20,000, on which execution was duly issued and returned "no property found." Appellee then began this suit under section 49, ch. 22, R. S. (J. & A. ¶ 929), charging that the stock subscribed for by and issued to James H. Wells for himself and James B. Wilbur, the appellant, was not fully paid for, and that they each owed the corporation a very considerable sum of money therefor, and seeking to recover of them the unpaid balance so due to apply to the payment of his judgment. The court found that such stock was not fully paid for; that of the par value of $49,800 of the stock subscribed for by Wells, only $31,425.48 had been paid; that there was still due thereon $18,374.52, or $9,187.26 from Wells and a like amount from Wilbur, and a decree was entered in accordance with such finding and ordering appellant and James H. Wells each to pay to appellee $9,187.26 to

apply on his judgment against the American Spring
Water Supply Company. James B. Wilbur alone ap-
pealed from that decree.

A great amount of time, space and energy has been
consumed by counsel on both sides in arguing pro and
con the proposition that where one corporation ab-
sorbs all the assets of another, the two corporations
thereby become consolidated and the absorbing cor-
poration becomes liable for the debts of the absorbed
corporation; that in that event a complete remedy at
law exists, and equity will not afford relief. As ap-
plied to the facts in this case, that question is purely
academic. While it is true that Otis W. Hinckley and
George J. Schmitt, as partners, after they became the
owners of the assets of the American Spring Water
Supply Company and had the same in their possession,
turned over a very considerable part of the same to
Hinckley & Schmitt, incorporated, that transaction
cannot be construed to be an absorption by Hinckley
& Schmitt, incorporated, of assets of the American
Spring Water Supply Company for two plain rea-
sons: *First,* the latter company, at the time of that
transaction, neither owned nor had any interest in or
control over the goods so turned over to Hinckley &
Schmitt, incorporated, by Otis W. Hinckley and
George J. Schmitt, it having before that time sold,
conveyed and delivered the same to Otis W. Hinckley
and George J. Schmitt; *second,* even if the part of the
assets of the American Spring Water Supply Com-
pany that eventually came into the possession of
Hinckley & Schmitt, incorporated, through Otis W.
Hinckley and George J. Schmitt, copartners, had been
transferred directly from one corporation to the other,
the transaction could not be held to be a consolidation
of the two corporations by the absorption of the assets
of the one by the other, because the very substantial
amount of $4,000, in cash collected out of the book ac-
counts of the American Spring Water Supply Com-
pany by Otis W. Hinckley and George J. Schmitt, co-

partners, to say nothing of the book accounts of that corporation that are not shown to have been collected, was never turned over to, or came into the possession or control of, Hinckley & Schmitt, incorporated. The principle sought to be applied rests on the absorption by one corporation of all, not part, of the assets of the other. It is, therefore, unnecessary for this court to determine what the effect in law would have been, if there had been an absorption by Hinckley & Schmitt, incorporated, of all the assets of the American Spring Water Supply Company.

Section 49 of the Chancery Act (J. & A. ¶ 929) provides: "Whenever an execution shall have been issued against the property of a defendant on a judgment at law or in equity, and shall have been returned unsatisfied in whole or in part, the party suing out such execution may file a bill in chancery against such defendant and any other person to compel the discovery of any property or thing in action, belonging to the defendant, and of any property, money, or thing in action due to him, or held in trust for him, * * * the court shall have power to compel such discovery * * * and to decree satisfaction of the sum remaining due on such judgment out of any personal property, money or thing in action, belonging to the defendant or held in trust for him, * * * which shall be discovered by the proceedings in chancery, whether the same were originally liable in execution at law or not * * *."

The American Spring Water Supply Company, James H. Wells, James B. Wilbur, the appellant, Fred L. Wells and Albert A. Johnston were all made parties defendant and were all served with summons. That appellee obtained the judgment made the basis of this suit, and that execution was duly issued thereon and returned unsatisfied is not controverted. The main question of fact in dispute is whether the property turned over to the American Spring Water Supply

Company as full payment for the 498 shares of stock of the par value of $49,800, was in fact worth that amount of money. The property consisted of a large variety of articles, afterwards used in the business conducted by the new corporation, and that had been used in the same sort of business by the American Water Company. There was in this list of property 37 horses; 16 set of double harness; 2 set of single harness; 20 fly nets; 20 wagons; 2 buggies; a clipping machine, curry combs, brushes, brooms and other barn utensils, horse medicine, office furniture, safes, desks, chairs, stoves and the like; about 1,800 coolers; 25,000 ten gallon cans; 2,500 five gallon cans; 1,800 five gallon carboys; 1,700 cooler stands; 11,500 faucets; certain bottling machinery, tinners and other tools, trucks, and book accounts; also stock in trade, customers and good will of a going business. There were also to be considered in the transaction quite an amount of outstanding water coupons, which must be redeemed. From an examination of this list it is manifest that the determination of the value of this property is beset with unusual difficulty. In attempting to determine that question a great volume of evidence was taken, much of which necessarily rested in the opinion of the witnesses. An examination of this evidence discloses a most unusual and extraordinary divergence of opinion. One witness placed the total value as low as $7,000, while one witness estimated it to be of the value of $100,000. Other witnesses placed it at various amounts between the two extremes. Practically this same property was appraised in the bankruptcy proceeding at about $27,000, was bought by Wells at the receiver sale for $11,000, and was sold in January, 1904, to Otis W. Hinckley and George J. Schmitt for $31,425.48. The evidence tends to show that, while Wells and Wilbur and the American Spring Water Supply Company were the owners of this property, approximately $10,000, realized out of

the business, was expended in repairing and fixing up the property. The master, through processes of his own, determined from all this evidence that the value of the property, when it was turned in by Wells and Wilbur in payment for the stock in question, was $31,425.48. On review of the evidence the court confirmed the master's findings in that respect. The findings of the master and the trial court must be given due weight, and unless they are manifestly wrong a decree should not be reversed because such findings are against the weight of the evidence. We have given the evidence in this record most careful consideration, and while we might not be able to mathematically demonstrate the accuracy of the findings as to the value of the property in question, we are certainly not prepared to say it is manifestly wrong. It follows that this case must be determined upon the theory that at the time the property was turned in to the American Spring Water Supply Company as of the value of $49,800, and in payment for stock of that par value, it was over valued to the extent of the difference between $31,425.48, and $49,800, or $18,374.52. Appellant contends that, even if that be true, still "the overvaluation was solely an error in honest business judgment, and the issuance of the stock for the property cannot be set aside, unless other acts are shown constituting fraud. By this contention appellant seeks to invoke the so-called "good faith rule," which rests upon the theory that where, by the statutes under which it is organized, the stock of a corporation may be paid for in property instead of cash, or where that right is conceded, although not expressly authorized by statute, the overvaluation of the property turned in to the corporation in payment of stock, affords to the creditor of the corporation no right of action against the stockholders, provided the payment in property is made and accepted in good faith, or, in other words, if the transaction between the stockholders and the corporation is free from actual fraud.

In jurisdictions where the good faith rule is recognized and the appraisement is honestly made, the property turned in is deemed to be payment for the stock to the extent of the price at which it is so turned in and accepted, and the stockholder is protected to the same extent as if the amount so paid had been paid in cash. See 10 Cyc. 475, 476 and cases there cited. In this State, however, the so-called "true value rule" has received the indorsement of the courts and must be held to be in force. By this rule nothing except money or money's worth is to be regarded as payment for shares of capital stock in corporations, regardless of whether the transaction was entered into in good faith or not. By this rule one who subscribes for and receives stock of a corporation must pay therefor the par value thereof, either in money or money's worth, so that the real assets of the corporation at the outset at least shall square with its books. When either by fraud, accident or mistake, stock of a corporation, so subscribed for and delivered, has not been so paid for in money or money's worth, the holder thereof, wherever the true value rule is in force, is liable to the creditors of the corporation to the full extent of the difference between the par value of the stock and the money or money's worth paid or turned over to the corporation in payment therefor. The last expression of our Supreme Court on this subject is found in *Gillett v. Chicago Title & Trust Co.*, 230 Ill. 373, where the Court says: "It is contended by appellants that in accepting certain property in payment of MacKaye's subscription to the capital stock of the Columbian Celebration Company to the amount of $1,999,600, the directors fixed that value upon the property offered in the fair and honest exercise of their judgment as to its worth, and that the stock must therefore be regarded as fully paid and non-assessable, even if the directors erred in their judgment as to its value.

APPELLATE COURTS OF ILLINOIS.

"When the board of directors met on May 16, 1892, the principal asset of the corporation was MacKaye's subscription for stock to the amount above mentioned. The law required the directors, in collecting that subscription, to obtain from MacKaye 'money or money's worth' to the full amount of the subscription. (*Coleman v. Howe*, 154 Ill. 458; *Garden City Sand Co. v. Crematory Co.*, 205 Ill. 42.) 'Money or money's worth' means cash or its equivalent. If the directors saw fit to accept property in lieu of cash they could only take it at its fair cash market value, if it was property which had an ascertainable market value."

Appellant suggests that there is a third rule that applies to cases where the property turned in to the corporation in exchange for stock is of such a character that its value is not definitely ascertainable, but must necessarily be a matter of opinion in which case, it is contended, a reasonable latitude must be allowed for honest errors of judgment, and that unless actual fraud is shown by other acts the transaction will not be disturbed. This is not a third rule, as counsel argues. It is but a restatement of the good faith rule. Concerning that situation, the Supreme Court, in the *Gillett* case, *supra*, says, following the part above quoted: "If it had no ascertainable market value, then the only price at which the directors could purchase it was such price as could be realized by selling it to others for cash." Thereby applying the true value rule to the identical state of facts that counsel insists gives rise to a third rule.

The bill filed herein makes a case under the provisions of section 49 of the Chancery Act of this State (J. & A. ¶ 929), and all the material averments of the bill are supported by the proof. We are not prepared to hold that the amount found by the Superior Court to be unpaid on the stock of appellant is contrary to the manifest weight of the evidence. The decree of that court is, therefore, affirmed.

*Decree affirmed.*