400    APPELLATE COURTS OF ILLINOIS.

William E. Dee Co. v. Proviso Coal Co. et al., 212 Ill. App. 400.

## William E. Dee Company et al., Appellees, v. Proviso Coal Company and Oliver J. Westcott et al., on appeal of Oliver J. Westcott, Appellant.

### Gen. No. 23,138.

## William E. Dee Company et al., Appellees, v. Proviso Coal Company and James S. Stephens, on appeal of James S. Stephens, Appellant.

### Gen. No. 23,139.

1. CORPORATIONS, § 213*—*when necessary that property transferred by subscriber be equal to par value of capital stock.* A subscription to the capital stock of a corporation may be paid for in property as well as in money, but where the owner of the property transferred also dominates and controls the corporation and it becomes insolvent, it must, in a suit under section 25 of the Corporation Act (J. & A. ¶ 2442) to collect the unpaid portion of the subscription for the benefit of creditors, be made to appear that the true value of the property so conveyed is equal to the par value of the capital stock for which it is transferred in payment.

2. CORPORATIONS, § 213*—*what is extent of liability to creditors of directors purchasing property at excessive price in payment for capital stock.* The capital stock of a corporation is a trust fund for the benefit of creditors, and the directors are trustees of that fund, and where they purchased property from themselves, in payment of their subscriptions to its capital stock at a price above the true market value thereof, although in good faith, they will, in case of the insolvency of the corporation, in a suit in equity by its creditors, be held liable to the creditors for the difference between the true value of the property at the time it was transferred and the amount of their subscriptions to such capital stock.

3. CORPORATIONS, § 124*—*what is property for purpose of payment of subscription for capital stock.* Good will of a going coal retail business is property of such a character as can be turned in to pay subscriptions to the capital stock of a corporation.

4. EVIDENCE, § 45*—*what is nature and scope of burden of proof.* The term "burden of proof" has two distinct meanings, first, one referring to the quantum of evidence which the law demands to prove an issue in the case, and second, to the duty of producing

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

evidence at any stage of the trial.    The first is always upon the party asserting the affirmative of the issue; the latter passes from party to party as the case progresses.

5.  CORPORATIONS, § 231*—*when burden on defendants to show payment in full of subscriptions for capital stock.*   In a suit by creditors, under section 25 of the Corporation Act (J. & A. ¶ 2442), against stockholders of a corporation to collect the unpaid portion of the subscriptions of such stockholders to the capital stock of the corporation, after complainants have proved subscriptions by defendants to the capital stock of the corporation and the transfer of property owned by themselves to the corporation which they, as a majority of its directors, controlled in payment thereof, it is then for defendants to show that their subscriptions had been paid for in money or in money's worth.

6.  CORPORATIONS, § 231*—*when testimony of experts as to value of property and of going business is improperly excluded.*   Testimony of experts as to the value of property and of a going, profitable business turned over to a corporation in payment of subscriptions to capital stock of the corporation is improperly excluded in a suit by creditors under section 25 of the Corporation Act (J. & A. ¶ 2442), where there is no market value from which the value of the business upon the market can be determined.

7.  CORPORATIONS, § 213*—*what credit given to subscribers transferring going business in payment for capital stock.*   Subscribers to the capital stock of a corporation, who transfer to the corporation a live, going, profitable business in payment of subscriptions, are entitled to be credited upon their subscriptions with the amount for which the business and property would have sold on the day it was transferred to the corporation, assuming a seller willing but not compelled to sell, and a buyer willing, but not compelled to buy.

Appeal from the Superior Court of Cook county; the Hon. MARTIN M. GRIDLEY, Judge, presiding.   Heard in the Branch Appellate Court at the March term, 1917.   Reversed in part and affirmed in part and remanded with directions.   Opinion filed October 29, 1918.

BUTZ, VON AMMON & JOHNSTON, for appellants.

WILLIAM S. CORBIN, FRANK CROZIER and ALBERT N. CHARLES, for appellees; WILLIAM S. CORBIN, of counsel.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

MR. JUSTICE MATCHETT delivered the opinion of the court.

These are appeals separate (but consolidated here) by certain defendants from a decree entered by the Superior Court of Cook county. Appellees, complainants, are creditors of the defendant Proviso Coal Company, a corporation, and sued in equity to collect the unpaid portion of the subscription of appellants, James S. Stephens and Oliver J. Westcott, to the capital stock of said corporation. The action is brought under section 25 of the Corporation Act (J. & A. ¶ 2442).

The bill, in substance, charges that Stephens and Westcott, who organized the corporation, and at the time controlled it, caused to be transferred to the corporation, in payment of their subscriptions to its capital stock, certain property owned by themselves which was of less value than the amounts of their subscriptions. It also alleges that this was done with a fraudulent intent on their part.

The corporation was organized under the laws of Illinois on the 11th day of February, 1903, with a capital stock of $25,000 divided into 250 shares. Its objects were to deal in wood, coal, etc. Appellants Stephens and Westcott each subscribed for 125 shares of said capital stock. The corporation carried on business from the time of its organization until on or about the 20th day of June, 1911, at which time it made a voluntary assignment for the benefit of its creditors. It is insolvent.

At the time the corporation was organized, appellants Stephens and Westcott, as copartners, were the owners of and conducting a coal business in Maywood under the name of the Proviso Coal Company, which together with certain property used in and about said business was transferred to the corporation in full payment of their subscriptions to its capital stock. At the time of said transfer appellants dominated and

controlled the corporation through its board of directors and continued so to do for about 2 years, but at the end of that time sold and transferred the entire amount of their stock to defendant George Bendixen. The sale was partly in cash and partly on credit and for the sum of $3,000, plus the price of coal then in the bins.

At the time of this transfer to Bendixen, the then existing debts of the corporation had been paid and appellees have acquired all their claims since that time. It affirmatively appears from the evidence that there was no intentional fraud on the part of appellants. While this is creditable to them, it does not change the rule of law which must be applied, nor will it release them from liability if any in fact exists. *Moore v. United States One Stave Barrel Co.,* 238 Ill. 544.

The law on this subject is well settled. A subscription to the capital stock of the corporation may be paid for in property as well as money, but where the owner of the property transferred also dominates and controls the corporation and it becomes insolvent, it must in a suit of this kind brought by creditors be made to appear that the true value of the property so conveyed is equal to the par value of the capital stock for which it is transferred in payment. In other words, the subscriber must give either money or money's worth.

The capital stock of the corporation is a trust fund for the benefit of creditors, and the directors are trustees of that fund, and where they purchase property from themselves, in payment of their subscriptions to its capital stock at a price above the true market value thereof, although in good faith, they will, in case of the insolvency of the corporation in a suit in equity by its creditors, be held liable to such creditors for the difference between the true value of the property at the time it was transferred and the amount of their subscriptions to such capital stock. *Coleman v. Howe,* 154 Ill. 458; *Gillett v. Chicago Title & Trust Co.,* 230 Ill. 373;

*Cohen v. Toy Gun Mfg. Co.*, 172 Ill. App. 330; *De Shelter v. American Spring Water Supply Co.*, 182 Ill. App. 403.

The master to whom the cause was referred found the property transferred by Stephens and Westcott to the corporation in payment of their subscriptions to its capital stock to be of the value of at least $25,000 on the date of the transfer. The decree of the court sustained exceptions to certain findings of the master as to some items and found the total value of said property on that date to be $12,600; that it was overvalued to the extent of $12,400 and that each of said appellants Stephens and Westcott were liable for the debts of the corporation to the amount of $6,200, if it should become necessary for them to pay that amount in order to liquidate the debts due.

The chancellor overruling the master found that the good will of the business had no market value. Appellees do not concede that good will is property of such a character as can be turned into a corporation in payment of subscriptions to its capital stock, and urge there are no Illinois decisions so holding. We think the decisions cited above in effect so hold. Good will was included in the value found in the *DeShelter* case, *supra.* The weight of authority in this country is to the effect that it may be included. Thompson on Corporations (2nd Ed.), sec. 3955. However, the decree in this case is not based on the theory that good will is not property which may be turned into a corporation as the equivalent of cash, but on the contrary the court finds that the good will transferred in this particular case was without value, and disregards the fact that the property transferred included a going business.

Much is said in the briefs of the parties as to the burden of proof. Appellants insist that it is for the complainant to show that the property transferred by appellants was not of a value equal to the par value of their subscriptions, while appellees insist the burden

was upon appellants. The term "burden of proof" has two distinct meanings, first, one referring to the quantum of evidence which the law demands to prove an issue in the case, and second, to the duty of producing evidence at any stage of the trial. The first is always upon the party asserting the affirmative of the issue; the latter passes from party to party as the case progresses. *Chicago Union Traction Co. v. Mee,* 218 Ill. 9.

We think that when the complainants had proved the subscriptions by appellants to the capital stock of the corporation and the transfer of property owned by themselves to the corporation which they as a majority of its directors controlled in payment thereof, it was then for appellants to show that their subscriptions had been paid for in money or in money's worth. In *Union Ins. Co. v. Frear Stone Mfg. Co.,* 97 Ill. 547, the Supreme Court said: "* * * on the winding up of the corporation, such shareholders will be adjudged contributories, unless it shall appear they have given for such stock the equivalent in money or in money's worth." In *National Bank of America v. Pacific Ry. Co.,* 66 Ill. App. 330, the court said: "* * * it follows that the burden is upon them of making the fact of 'money or money's worth' appear." That decision was rendered by a divided court, and the dissenting opinion argued at length that the burden of proof was upon the complainants, but the judgment of the Appellate Court was affirmed in *Sprague v. National Bank of America,* 172 Ill. 149. (See also *Gilman, C. & S. R. Co. v. Kelly,* 77 Ill. 426.) We think that applying the rules laid down in these decisions to the record before us, it was for appellants to prove that the value of the property which they transferred to the corporation in payment of their subscriptions was equal to the amount of such subscriptions.

In determining the value of property of the kind here in controversy, it is difficult in the nature of things

to obtain satisfactory evidence. Sales in a fair and open market where the seller is willing but not compelled to sell, and the buyer is willing but not compelled to buy, when available, furnish satisfactory evidence by which such value may be determined. Unfortunately such evidence is not to be found in this record and it is impossible to determine the true valuation of the total amount of property conveyed with mathematical accuracy. Experts called by appellants testified that the value of the property and business conveyed by appellants exceeded in value the amount of their subscriptions. Appellees did not contradict this by similar expert evidence, but relied upon the cross-examination to show the evidence to be of little value, and now argue upon the authority of *Kirkman v. Kirkman,* 26 N. Y. App. Div. 395, that such evidence is inadmissible. The decision in *Kirkman v. Kirkman, supra,* purports to follow the ruling of the Court of Appeals of New York in the cases of *Wakeman v. Wheeler & W. Mfg. Co.,* 101 N. Y. 205, and *Reed v. McConnell,* 101 N. Y. 270. In those cases expert testimony was offered as to the amount of prospective damages sustained by reason of the breach of an executory contract, and such evidence was held inadmissible.

We do not think that rule should be extended so as to exclude the testimony of experts as to the value of a going business where there is no market value from which its worth upon the market can be determined. Such evidence was received in the *DeShelter* case, *supra,* as well as others which have been cited. The weight which should be given to such testimony is, of course, quite another matter. While we think in the instant case the master gave too much weight to this evidence, we think the chancellor erred in wholly disregarding it.

The decree sets forth the separate items of property conveyed, such as coal in the bins, accounts receivable, cash on hand, etc., and having found the value of these

items of property, gives to the whole property and business conveyed a valuation equal to the total amount of such items. The evidence, however, affirmatively shows that the property transferred to the corporation was not only these separate items, but a business with which the property was associated and used. It was a going business; it had a business name; it had a list of customers, and it had, as the uncontradicted testimony showed, the best site for that business in the town where it was conducted, in that it was located immediately adjacent to switch tracks which were of great advantage in conducting the business.

The report of the master shows that, at the time of the incorporation, sales of coal were at the average rate of 7,500 tons per year, at a net profit of 80 cents per ton. On a basis of 5,000 tons per year, the profits of the business from sales of coal alone would amount to $4,000 per year, or 16 per cent on the capitalization of $25,000. While this business was to a great extent due to temporary causes and had not existed for such time as would make possible a computation of the value of good will based upon so many years' purchase of the profits of the business (*Austen v. Boys,* 2 De Gex & J. 626; *Mellersh v. Keen,* 28 Beav. 453), yet we think it would have materially increased the price which a willing purchaser would have paid for the property and business as a whole.

The situation is unlike that which has been called to our attention in *Farwell v. Huling,* 132 Ill. 112, where the court found that the good will was of no value, saying: "In short, if there is anything in this record, except the conclusion of the master, tending to show that any firm, at an entirely different locality, under an entirely different name, could not have commenced and carried on the same business with as much success as could be by the successors of this firm at the old stand, we have been unable to discover it."

We do not deem it necessary to attempt technical

distinctions as to definitions of good will, or lay down rules by which the value of that good will at any given date should be determined. The property which appellants transferred to the corporation was a going, profitable and live business and in fairness and justice they are entitled to be credited upon their subscriptions to stock with the amount for which that business and property would have sold on the day it was transferred to the corporation, assuming a seller willing but not compelled to sell, and a buyer willing but not compelled to buy.

Upon a rehearing granted, while we are not satisfied that the valuation as found by the master is correct, we think the method by which the chancellor arrived at the valuation found by the decree is erroneous.

We have carefully considered the evidence. The valuation for which appellants should be given credit cannot be determined therefrom with mathematical accuracy. It is conceded there was a mistake as to the amount allowed for cash on hand at the time the business was transferred to the corporation. Appellees state they are willing that an additional allowance of $140 should be made for that item. We think there should also be allowed to appellants an additional credit of $5,000 as representing the further sum that a willing purchaser would have paid over and above the value of the separate items of property as found by the decree for the business as a going one, including its good will. Appellants are, therefore, entitled to be credited on their subscriptions on account of the property conveyed by them to the corporation in payment thereof, the sum of $17,740, and for the balance due upon their subscriptions they are liable as found by the decree.

The decree is therefore reversed in part and affirmed in part, and the cause remanded with directions to the Superior Court to modify the decree in accordance with the views herein expressed.

*Reversed in part and affirmed in part and remanded with directions.*