Linden Brothers v. P. E. & E. P. Co. et al., 227 Ill. App. 307.

# Linden Brothers, Appellant, v. Practical Electricity and Engineering Publishing Company, Joseph G. Branch and Acors W. Rathbun, Appellees.

## Gen. No. 27,845.

1. CORPORATIONS—*when capital stock is fully paid for in value other than money.* In a suit to enforce liability of stockholders for debt of the corporation, the capital stock of such company is shown to be fully paid for and nonassessable where it appears that the corporation in question was organized to carry on the publication of a magazine which had been previously published by an individual who became the principal stockholder in the corporation and that all the capital stock, except shares issued to persons to qualify them as directors, was issued in exchange for a paid-up list of subscribers to the magazine together with advertising contracts and the good will of the business of publishing such magazine, and the preponderance of evidence shows that the list of subscribers, alone, was worth as much as the par value of the entire issue of capital stock and that the magazine at that time was a going concern.

2. CORPORATIONS—*expert evidence as to value of corporate stock in stockholders' liability suit.* In a suit against stockholders of an insolvent corporation to charge them with liability for an unsatisfied judgment against the corporation, where the principal issue is as to whether a paid-up subscription list to a going magazine together with advertising contracts and good will which were exchanged for the capital stock of the corporation were fairly worth the stock in question, the value of such property may be proven by expert witnesses where it is impossible to show the market value of the property in question at the open market.

Appeal by complainant from the Circuit Court of Cook county; the Hon. Hugo M. Friend, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1922. Affirmed. Opinion filed January 2, 1923. Rehearing denied January 15, 1923.

George C. Otto, for appellant.

Roy C. Merrick, for appellee Joseph G. Branch.

Paden & Kropf, for appellee Acors W. Rathbun.

Mr. Justice Morrill delivered the opinion of the court.

This is an appeal from a decree of the circuit court of Cook county, entered March 30, 1922, dismissing the bill of complaint for want of equity at complainant's cost. The bill was filed February 8, 1917, under section 25 of the Corporation Act of 1872, to enforce the liability of stockholders of defendant corporation. Complainant, who is appellant here, is the holder of an unsatisfied judgment for $2,104.87 against the defendant Practical Electricity and Engineering Publishing Company. The testimony was taken before a master in chancery, who made a report in favor of complainant, and recommended the entry of a decree in conformity therewith. The exceptions to said report filed by defendant Rathbun were sustained by the chancellor. A final decree was then entered as above stated.

The bill of complaint alleged the recovery of a judgment by complainant against the Publishing Company for $2,104.87, the return unsatisfied of an execution thereon after demand, the incorporation of the Publishing Company under the laws of Illinois with a capital stock of $50,000 divided into 500 shares of $100 each, the issuance of the entire capital stock in exchange for a paid-up list of 14,000 subscribers to the Practical Electricity and Engineering Magazine, together with the advertising contracts and the good will of the business of publishing said magazine and of its former proprietor, Joseph G. Branch, the valuation of said property by the commissioners at the sum of $50,000, and charged that said property was of no substantial value. The bill further alleged that defendant Branch was the owner of 397 shares, defendant Rathbun of 101 shares and that one share was owned by each of two other persons who were nonresidents of Illinois at the time of filing the bill. The bill prayed for a discovery as to the property of de-

fendant corporation and that defendants Rathbun and Branch be held liable for the payment of the judgment debt to the extent of the unpaid portion of the stock owned by them respectively. It is unnecessary to set out in further detail the allegations of the bill or the averments of the answers of the respective defendants, as the material facts are practically undisputed.

The record shows that prior to August 8, 1912, defendant Branch had been engaged for several years in the City of Chicago in the business of furnishing information upon engineering questions and in publishing a magazine known as "Practical Electricity and Engineering," which was devoted to the discussion and elucidation of electrical and engineering questions, and which was printed by the Henry O. Shepard Company. Branch was a man of liberal education and extensive experience in these lines and had been publishing the magazine in question since November, 1910. On August 8, 1912, defendant Branch entered into an agreement with the Henry O. Shepard Company, which was then and had been for many years engaged in the printing business in Chicago. The contract provided that the latter should continue to print the magazine as heretofore and for the settlement of Branch's existing indebtedness to the Henry O. Shepard Company and of future printing bills by the notes of a corporation to be formed for conducting the business of publishing the magazine, said notes to be indorsed by Branch personally and by another prospective corporation to be known as the Joseph G. Branch Publishing Company. Branch was then indebted to the Shepard Company to the amount of $31,000. The agreement further provided that when the total indebtedness was reduced below $20,000 no indorsement upon the notes given for the outstanding accounts should be required. The Shepard Company further agreed to advance sufficient money to take care of the pay roll, not to exceed $155 per week, postage

310     APPELLATE COURTS OF ILLINOIS.

Linden Brothers v. P. E. & E. P. Co. et al., 227 Ill. App. 307.

and the expenses of an advertising solicitor. Defendant Branch agreed to incorporate the Practical Electricity and Engineering Publishing Company with a capital stock of $50,000 fully paid up and nonassessable, and further agreed not to transfer any of the stock as long as the indebtedness to the Shepard Company remained unpaid, unless the proceeds from the sale of such stock be applied to the debts due to the Shepard Company, and that notice should be given to the latter of any such sale, "the intent of this being that money from the sale of any stock of the two above corporations shall be first applied to the payment of indebtedness to said Henry O. Shepard Company." Branch further agreed not to use any of the above-mentioned stock issued to him as collateral security for the borrowing of money from any source other than the Henry O. Shepard Company during the period that the latter company was advancing cash and giving credit to the enterprise, except for the purpose of receiving money to be applied on the indebtedness to the Shepard Company. The agreement provided that Branch and his office assistants should have entire charge of all matters regarding editorial work, handling the subscription lists, soliciting advertising, distribution and sale of books, but that no indebtedness exceeding $100 in amount should be incurred without consulting the officers or cashier of the Shepard Company. It is unnecessary to recite the further provisions of the contract relating to the details of the proposed business.

Before this contract was executed Branch had extensive negotiations with the president of the Shepard Company and defendant Rathbun, who was the treasurer thereof, during which it was agreed that Branch should deposit with the Shepard Company, in connection with the above contract as collateral security, two policies of insurance upon his life and certificates for 100 shares of the capital stock of the Practical

Electricity and Engineering Publishing Company. To enable Mr. Rathbun, as treasurer of the Shepard Company, to keep in touch with the affairs of the proposed corporation for the protection of the interests of the Shepard Company, he was to subscribe for one share of the capital stock of the proposed corporation and was to be elected director and treasurer thereof. The entire transaction indicates the intention of the contracting parties that the Shepard Company was to finance the Publishing Company and was to be secured by the control given to it over the capital stock of the latter.

After the execution of the contract of August 8, 1912, Branch caused the Practical Electricity and Engineering Publishing Company to be incorporated. Defendant Rathbun subscribed for one share of its capital stock and was elected a director and treasurer thereof. He did not attend the stockholders' or directors' meetings personally. In accordance with the verbal understanding which preceded the execution of the contract of August 8, 1912, Branch deposited two policies of insurance upon his life with the Henry O. Shepard Company and, as appellees contend, two certificates for 50 shares each of the capital stock of defendant company, which were issued to Joseph G. Branch. Appellant contends that defendant Rathbun was the owner of the 100 shares of stock evidenced by these two certificates and that the same were not held by the Shepard Company as collateral security for the indebtedness due them.

The record shows that defendant Branch subscribed for 497 shares of the capital stock of defendant corporation, defendant Rathbun for one share, and that two other persons whose names are not otherwise involved herein subscribed for one share each. The organization of the company was then completed on August 23, 1912. The stock was issued in conformity with the subscription list September 5, 1912. Certifi-

312    APPELLATE COURTS OF ILLINOIS.

Linden Brothers v. P. E. & E. P. Co. et al., 227 Ill. App. 307.

cates numbered 1 and 2 for 50 shares each were issued to Joseph G. Branch and were assigned by him to defendant Rathbun, who receipted for them upon the stub of the stock certificate book. Certificate number 3, for one share, was issued to defendant Rathbun and was indorsed by him in blank and left in the custody of the company. It was not delivered to or received by Rathbun. After receiving certificates numbered 1 and 2, defendant Rathbun caused them to be placed in the safe deposit box of the Shepard Company, where they remained until produced upon the trial of this case. Appellant contends that defendant Rathbun was the owner of 101 shares of the capital stock of defendant corporation; that defendant Branch was the owner of 397 shares of said capital stock; that the assets received by the company in exchange for its capital stock were of no substantial value and that appellant is entitled to recover the amount of his judgment from the portion remaining unpaid on the shares of capital stock owned by defendants Rathbun and Branch respectively.

From the foregoing it appears that two questions are presented for determination in this case: First, was the capital stock of defendant corporation fully paid and nonassessable? If this question is answered in the affirmative, it is apparent that there will be no necessity of discussing the second, which involves the alleged liability of Rathbun, as the owner or transferee of 101 shares of the capital stock of defendant corporation. It is undisputed that defendant Branch was the owner of 397 shares of said capital stock. If the stock was fully paid and nonassessable, the ownership of the shares is immaterial.

Upon the question of the value of the assets received by defendant corporation in exchange for its capital stock, one witness testified on behalf of complainant and four on behalf of defendants. It is conceded that the principal asset which was given in ex-

change for the capital stock of defendant corporation was a paid-up subscription list of from fourteen to fifteen thousand actual subscribers to the magazine in question. This magazine had been conducted by defendant Branch for about two years prior to August, 1912, and was a going concern. Henry P. McNeal, one of defendants' witnesses, testified that in 1912 a subscription list of that size in such a magazine was worth from $40,000 to $75,000. This witness had been engaged for twenty-six years in the business of publishing magazines and at the time of testifying was actually engaged in the publication of two magazines of the same general character as the one involved herein and was personally interested in seven additional publications of that kind as a stockholder and that he was fully acquainted with the magazine in question.

Robert W. Larkin, another witness on behalf of defendants, had been engaged in the business of publishing magazines for thirty years and had been the owner or connected with four different magazines devoted to engineering and electricity. At the time of testifying he was the general manager of a magazine known as the ''National Engineer,'' and had held that position for twenty-five years. He was familiar with the magazine published by defendant corporation and testified that the fair cash market value of a paid-up subscription list such as is involved herein in the year 1912 would be about $40,000, which would be considerably enhanced provided the publication had a fair amount of advertising.

Defendant Branch also testified upon this subject to the effect that the subscription list in question was worth $50,000. He had been engaged in the publication of this magazine for a considerable period and through his efforts the subscription list had been built up. Defendant Rathbun, who had been in the publishing business for twenty years in connection with the Shepard Company, which published numerous maga-

314    APPELLATE COURTS OF ILLINOIS.

Linden Brothers v. P. E. & E. P. Co. et al., 227 Ill. App. 307.

zines, testified that the fair cash value of such a subscription list in 1912 was from $5 to $6 per name.

The only witness who testified on behalf of complainant upon this subject was one Elmer H. Gleason, who had been in the employ of the Shepard Company or the Inland Printer for six or seven years prior to the time of testifying. The matters under consideration occurred in 1912, which was several years before this witness had any connection whatever with the publishing business. His testimony showed that he regarded the subscription list as merely a list of names and that in stating that such a list had no substantial value he was not referring to a list of paid-up subscribers in a going magazine. It is apparent that his testimony is entitled to but little weight upon the question involved. A great preponderance of evidence was to the effect that the corporation received a full consideration for the value of its capital stock by the assignment to it of the subscription list, advertising contracts and good will of the magazine in question.

Many cases have been before the courts of this State involving the question of the issuance of the capital stock of corporations for considerations other than money and the payment therefor by labor, property, work under contract or other valuable consideration. When such a payment is made otherwise than with money, it is essential that the property received shall be reasonably worth the sum at which it is taken. If the valuation is made in good faith at the time of the transaction and without fraud, payment by property or labor satisfies any liability for the stock subscription to the same effect as a payment in money of the same amount. *Farwell v. Great Western Tel. Co.*, 161 Ill. 522; *Gillett v. Chicago Title & Trust Co.*, 230 Ill. 373.

The property is not to be considered as over valued merely because the business of the corporation to which it was conveyed has proved unsuccessful. The

present value of the property after the unsuccessful operation of the company's business does not establish over valuation at the time the transaction took place. 1 Cook on Corporations, sec. 35; *McCarter v. Pitman, G. & C. Gas Co.*, 74 N. J. Eq. 255. The transaction involved in the present case was in no sense a sham or subterfuge to evade liabilities. It was consummated by agreement with the Henry O. Shepard Company, the principal if not the sole creditor, of the business in question. The record shows that practically all enterprises of this character are conducted at a loss during the first few years of their existence. This fact explains why printing concerns and dealers in material appear willing to give an extensive credit to such an undertaking, when it appears meritorious and gives promise of success.

In the present case the transaction was between the defendant Branch and the newly organized corporation of which he became president, director and manager. Under such circumstances the burden of proof was upon defendants to show that the valuation of the property transferred in payment for the stock subscription was not only made in good faith but was the true value thereof. *Coleman v. Howe*, 154 Ill. 458; *Gillett v. Chicago Title & Trust Co., supra; Cohen v. Toy Gun Mfg. Co.*, 172 Ill. App. 330; *DeShelter v. American Spring Water Supply Co.*, 182 Ill. App. 403. It was incumbent upon defendants to show that the original stock subscription was satisfied in money or money's worth. It would doubtless have been more satisfactory as a means of determining the value of the property in controversy to show sales in the open market, where both seller and buyer are free to act. Such evidence, however, was not available in the present case and it was impossible to determine the true value of the property conveyed with absolute accuracy. Four expert witnesses were called by appellee, two of whom were absolutely disinterested, and they

316    APPELLATE COURTS OF ILLINOIS.

Linden Brothers v. P. E. & E. P. Co. et al., 227 Ill. App. 307.

testified that the value of the property and business transferred to the new corporation equalled or exceeded the par value of its capital stock. This testimony was not contradicted by other expert witnesses, and appellant relies wholly upon the assertion that such testimony must be regarded as worthless and unconvincing.

Under similar circumstances evidence of this character has been held admissible, regardless of the weight which should be attached to it. *DeShelter v. American Spring Water Supply Co., supra; Wm E. Dee Co. v. Proviso Coal Co.,* 290 Ill. 252. Where there is no market value from which the value of the property upon the market can be determined, the testimony of experts as to the value of such property and of a going business turned over to a corporation in payment of a subscription to its capital stock is admissible in a suit of this kind. *Wm. E. Dee Co. v. Proviso Coal Co.,* 212 Ill. App. 400.

The only evidence upon the subject contained in the record tends to show that the value of the property conveyed to defendant corporation in payment of the subscription to its capital stock was equal to or in excess of the total par value of said stock. This evidence is uncontradicted. The controversy must be decided upon the evidence shown in the record and not based upon the conclusions of counsel based upon the subsequent unsuccessful operations of the company. We are therefore of the opinion that the circuit court was correct in holding that the stock of defendant corporation was fully paid and nonassessable. This being the case, it is entirely immaterial to determine whether or not defendant Rathbun was an actual owner of any of said stock. A large part of the briefs of counsel are devoted to a discussion of this question, which we do not regard as material when the uncontradicted evidence shows that the stock of defendant corporation was fully paid and nonassessable.

The decree of the circuit court is affirmed.

*Affirmed.*

BARNES, P. J., and GRIDLEY, J., concur.